**In re William Roosevelt HOWELL, Debtor.**

**NORTH CAROLINA BAPTIST HOSPITALS, INC., Appellant,**

v.

**William Roosevelt HOWELL, Appellee.**

**No. C–85–269–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Aug. 1, 1985.

Eric P. Handler, Greensboro, N.C., for appellant.

David Spangler, Greensboro, N.C., for appellee.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on appeal from the Bankruptcy Court of the Middle District of North Carolina.

Judge Wolfe entered an order on November 9, 1984 relieving the debtor from the waiver of the right to set aside exemptions and allowing property exemptions claimed in connection with these proceedings. For the reasons that follow, this court is of the opinion that the bankruptcy court's decision should be affirmed.

### Statement of Facts

In 1981 and 1982, appellant North Carolina Baptist Hospitals, Inc. commenced two separate civil actions against the debtor in the Superior Court in Rockingham County, North Carolina. In 1982, default judgments were entered in both actions and became liens when docketed on all the debtor's real property in Rockingham County, including his residence at 2107 Mill Avenue, Eden, North Carolina. In June 1983, pursuant to N.C.Gen.Stat. § 1C–1603, notices were issued in each action informing the debtor that in order to preserve his exempt property from execution under the judgments, he was required within twenty days to file with the clerk of superior court a motion claiming his exemptions. The notices and copies of blank form motions for

claiming exemptions were served on the debtor on June 6, 1983 at the prison facility where he was then serving an active sentence. After consulting a prison guard, the debtor discarded the documents served on him. Although he was released from prison on July 8, 1983, the debtor neither contacted his former attorney nor made any attempt to contact the superior court regarding his exemptions. On July 28, 1983, the clerk of superior court entered orders in each action declaring that the debtor's exemptions were waived under N.C.Gen.Stat. § 1C–1603(e)(2). The debtor has not made any attempt in the superior court to appeal from, modify, or set aside the orders of waiver entered by the clerk.

On January 6, 1984, the same attorney whom the debtor had consulted earlier filed for the debtor a petition in bankruptcy court for relief under Chapter 7 of the Bankruptcy Act. The debtor claimed an exemption of $7,500, pursuant to 11 U.S.C. § 522(b)(2) and N.C.Gen.Stat. § 1C–1601, in his residence at 2107 Mill Avenue, Eden, North Carolina. On January 27, 1984, the appellant filed a proof of claim in the bankruptcy court, which claim asserts the liens of both its judgments. No objection to the claim was made, but on May 7, 1984, the appellee moved in the bankruptcy court to avoid the liens of appellant's judgments pursuant to 11 U.S.C. § 522(f). While the appellee's motion was pending, and with the appellant's consent, the subject residence was sold by the bankruptcy Trustee, with all liens being transferred to proceeds pursuant to 11 U.S.C. § 363(f). On November 9, 1984, the bankruptcy court entered the order from which this appeal was taken. Accordingly, all proceeds of the sale have been disbursed by the Trustee except for $7,500 which the Trustee retains pending this appeal.

### Discussion

■ The United States Congress has the power under the Constitution to establish uniform bankruptcy laws. U.S. Const. art. I, § 8. As a result, specific provisions have been ·enacted regarding exemptions, specifically 11 U.S.C. § 522. North Carolina has chosen to "opt out" of the federal bankruptcy scheme for exemptions, as permitted by the Bankruptcy Act, and allows the exemptions as set out in N.C.Gen.Stat. § 1C–1601. This "opt out" provision of the Bankruptcy Act is set forth in 11 U.S.C. § 522(b)(2). Because of the congressional authority to establish uniform bankruptcy laws, any interpretation of North Carolina law must not conflict with the Bankruptcy Act. See Cheeseman v. Nachman, 656 F.2d 60 (4th Cir.1981). "The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount." International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929).

This court views the "opt out" provision of 11 U.S.C. § 522(b) as pertaining only to 11 U.S.C. § 522(d). Thus, the remainder of the Bankruptcy Act, and in particular Subsection 522(l ), operates independently of Subsection 522(b). Subsection 522(l ) reads as follows:

> (l ) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522(l ). This section provides no specific time limit for filing exemptions. North Carolina General Statute, Section 1C–1601(c) reads as follows:

> (c) Waiver.—The exemptions provided in this Article and in Sections 1 and 2 of Article X of the North Carolina Constitution, cannot be waived except by:
>
> (1) Transfer of property allocated as exempt (and in that event only as to the specific property transferred), or
>
> (2) Written waiver, after judgment, approved by the clerk or district court judge. The clerk or district court judge must find that the waiver is made freely, voluntarily, and with full knowledge of the debtor's rights to

exemptions and that he is not required to waive them;

(3) Failure to assert the exemption after notice to do so pursuant to G.S. 1C–1603. The clerk or district court judge may relieve such a waiver made by reason of mistake, surprise or excusable neglect, to the extent that the rights of innocent third parties are not affected.

North Carolina General Statutes, Section 1C–1603(e) provides in pertinent part as follows:

(e) Procedure for Setting Aside Exempt Property.—

(1) When served with the notice provided in G.S. 1C–1603(a)(4), the judgment debtor may either file a motion to designate his exemptions with a schedule of assets or may request, in writing, a hearing before the clerk to claim exemptions.

(2) If the judgment debtor does not file a motion to designate exemptions with a schedule of assets within 20 days after notice of his rights was served in accordance with G.S. 1C–1603(a)(4) or if he does not request a hearing before the clerk within 20 days after service of the notice of rights and appear at the requested hearing, the judgment debtor has waived the exemptions provided in this Article and in Sections 1 and 2 of Article X of the North Carolina Constitution. Upon request of the judgment creditor, the clerk shall issue a writ of execution or writ of possession.

It is apparent from these subsections that North Carolina's provision severely undermines the effectiveness and limits the application of the federal provisions. The federal policy of providing debtors with a fresh start must be taken into consideration when analyzing these differing provisions. When so done, it is clear that the federal provision, Subsection 522(*l*), must be read independent of the state provision in order to resolve the inherent conflict between the two. There is no question that when a state law conflicts with a federal law, the former is preempted by the latter. U.S. Const. art. VI, cl. 2. The inconsistencies which exist between federal and state law should undoubtedly be resolved in favor of federal law. Thus, where a time limitation or a lack of time limitation in a federal provision is different from a provision in state legislation, the federal legislation controls. To hold otherwise, especially in the context of bankruptcy, would frustrate "Congress' policy of giving debtors a new start." *Perez v. Campbell*, 402 U.S. 637, 650, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).

It is well settled that Congress, in allowing debtors to exempt certain property from the bankruptcy estate, intended that debtors be allowed to start anew in their affairs. As the Fourth Circuit states in *Cheeseman:*

In developing the Act's exemption law, Congress observed that under prior law exemptions had been determined by reference to state laws which had become so outdated in many instances that they were "hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6087. Congress recognized a federal interest in ensuring that a debtor going through bankruptcy retain sufficient possessions to begin anew—to have a fresh start. *Id.* Thus, federal exemptions became part of the Act, but state exemptions were also retained, so that exemption levels could be set at a level commensurate with the standard of living in various parts of the country. [Footnotes omitted.]

*Cheeseman v. Nachman*, 656 F.2d 60, 63–64 (4th Cir.1981).

It is abundantly clear that Congress had great concern for the debtors' "fresh start" legislation. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 75–76, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5862.

### Conclusion

In light of Congress' intent to preserve a debtor's fresh start in bankruptcy and in

light of the preemption doctrine, the order of the bankruptcy court should be affirmed. A Judgment will be filed contemporaneously herewith.