**In re Bernard Kenneth ALLEN t/a B.K. Allen Builders, Debtor.**

**Bankruptcy No. 81–00306–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Aug. 5, 1985.

Kevin R. Huennekens, Richmond, Va., for debtor.

William C. Parkinson, Jr., Richmond, Va., for Chapter 7 trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on the objection by William C. Parkinson, Jr., the Chapter 7 trustee, to certain exemptions claimed by the debtor, B.K. Allen ("the debtor"). The debtor responded to the trustee's objection to the claimed exemptions and a hearing was held in this Court on April 16, 1985. At the hearing, the Court heard the testimony of the debtor and the arguments of the trustee and counsel for the debtor. At the conclusion of the hearing the Court took the matter under advisement. Upon consideration of the evidence adduced at the hearing as well as the pleadings and argument of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor pursuant to 11 U.S.C. § 109 filed a voluntary petition in this Court under 11 U.S.C. § 301 seeking relief under Chapter 11 of Title 11 of the United States Code on February 24, 1981 styled as "Bernard Kenneth Allen t/a B.K. Allen Builders." In Schedule B–4 of the petition filed on that date, the debtor sought to exempt pursuant to Virginia Code § 38.1–482 (Repl.Vol.1981) certain proceeds from the cash value of two life insurance policies from the Equitable Assurance Society. Policy No. 68406574 in the amount of $8,520.92 and Policy No. 73406690 in the amount of $7,133.50 were claimed exempt pursuant to that section.

In addition, the debtor sought to exempt under the "poor debtor's" exemption pursuant to Virginia Code § 34–26 (Repl.Vol. 1984) among other things three vehicles which the debtor claims are used in his trade as a carpenter/general contractor. Those vehicles were (1) a 1978 Jeep Wagoneer valued in the amount of $3,100, (2) a 1975 Lincoln valued in the amount of $700.00, and (3) a 1981 E–100 Van valued in the amount of $3,100. Finally, the debtor sought to exempt numerous saws, drills, and other tools and equipment under Virginia Code § 34–26 as "tools of his trade."

The debtor's Chapter 11 case was subsequently converted to Chapter 7 on February 1, 1985 and William C. Parkinson, Jr., was appointed the Interim Trustee for the Chapter 7 estate. Parkinson has continued to serve as trustee since the first meeting of creditors held on March 6, 1985. On March 25, 1985 the trustee filed his objection to the debtor's exemption of the life insurance policies pursuant to Virginia Code § 38.1–482, and further objected to the poor debtor's exemption of the three vehicles and the list of equipment designated by the debtor as "tools of [his] trade" exempt under Virginia Code § 34–26. The debtor responded to the trustee's objection on April 15, 1985 arguing that each of the items were properly exemptable by the debtor.

At the hearing on April 16, 1985 the trustee advised the Court that should the debtor amend Schedule B–4 to reflect that the proper section with which to exempt the proceeds of the two life insurance policies was Virginia Code § 38.1–449 (Repl. Vol.1981), the trustee would withdraw his objection to that exemption. On April 29, 1985, the debtor filed an amended Schedule B–4 which exempts the proceeds from those life insurance policies under Virginia Code §§ 38.1–448 and –449 (Repl.Vol.1981) in order to comply with the trustee's conditional withdrawal of his objection.

At the hearing, the only evidence was that of the debtor. The debtor testified that at the time of filing his Chapter 11 petition in this Court his occupation was that of a general contractor. He further testified that he had been a carpenter by trade all of his life, but had attempted to

get into the general contracting business. B.K. Allen Builders had as many as 16 employees working at one time and the debtor testified that at times he had as many as seven houses under construction.

The debtor testified that although he was the general contractor and supervised generally the work of his employee carpenters, he also did some of the work himself. The debtor testified that he "laid off" all of his projects, did the offsets for the footings, inspected the concrete, and did the "setback" and line requirements among other things. Moreover, the debtor testified that if the work was delayed for whatever reason, he would also perform some of the carpentry work where necessary to get the project back on schedule. However, if the project was not behind he testified he generally would not do the carpentry work. The debtor testified that he supplied power tools to his employees but not hand tools. When asked to define what is meant by the term "contractor," the debtor responded that a contractor "is a carpenter who goes into business for himself to work on contracts other than working by the hour for another carpenter."

With respect to the vehicles claimed exempt by the debtor the Court finds from the testimony that the Lincoln automobile was not used in the debtor's business but as the debtor's wife's personal car. The Court further finds that the other two vehicles were actually used by the debtor, but not at the same time. However, both vehicles might be used on the same day on different jobs.

Finally, the debtor testified that he is currently engaged in the carpentry trade and has not been in the general contracting business since the demise of B.K. Allen Builders upon the conversion of this case from Chapter 11 to Chapter 7 on February 1, 1985.

## CONCLUSIONS OF LAW

Due to the pending withdrawal of the trustee's objection to the debtor's exemption of the life insurance proceeds, the only remaining objections to be examined by this Court are the exemption of the three vehicles and those items enumerated by the debtor as "tools of the trade." In this regard, this Court is asked to construe the pertinent provision of Virginia Code § 34–26 which states that in addition to the homestead exemption to which every householder residing in the state is entitled, such householder shall also be entitled to exempt "(5) . . . in [the] case of a mechanic, the tools and utensils of his trade." [1] The resolution of this dispute between the trustee and the debtor involves consideration of whether the debtor is in the first instance a "mechanic," and if so, whether the items enumerated in Schedule B–4 of the petition are in fact "tools and utensils of his trade."

In the construction of statutes, Virginia follows the rule that: "If the language of the statute has a definite and precise meaning, expressed in clear and concise terms, so that the sense is manifest, [the court interpreting the statute is] required to adopt the sense which it naturally presents." *Miller v. Commonwealth*, 172 Va. 639, 648, 2 S.E.2d 343, 347 (1939). Thus, the words of a statute are to be given their plain and ordinary meaning unless the statute is ambiguous or it is apparent that the words were used by the legislature as terms of art. In this case, the statute is not ambiguous and there is no indication that the Virginia legislature intended any other meaning for the terms

---

**1.** § 34–26. Exempt articles enumerated.—In addition to the estate, not exceeding in value $5,000, which every householder residing in this State shall be entitled to hold exempt, as provided in Chapter 2 (§ 34–4 et seq.) of this title, he shall also be entitled to hold exempt from levy or distress the following articles or so much or so many thereof as he may have, to be selected by him or his agents:

. . . .

(5) . . . *in case of a mechanic, the tools and utensils of his trade,* . . . .

No officer or other person shall levy or distrain upon, or attach, such articles, or otherwise seek to subject such articles to any lien or process. (Code 1919, § 6552; 1934, p. 371; 1936, p. 322; 1956, c. 637; 1970, c. 428; 1975, c. 466; 1976, c. 150; 1977, cc. 253, 496.) (emphasis added).

"mechanic" and "tools and utensils of his trade" other than their plain and ordinary meaning. It appears that those terms are not defined elsewhere in the statute.

First, the term "mechanic" is defined in The American Heritage Dictionary of the English Language (new college ed. 1980) as "[a] worker skilled in making, using or repairing machines and tools." *Id.* at 813. A similar definition is contained in Black's Law Dictionary (rev. 4th ed. 1968) which describes a mechanic as "[a] person skilled in the practical use of tools.... A workman employed in shaping and uniting materials such as wood, metal, etc., into some kind of structure, machine, or other object, requiring the use of tools." *Id.* at 1132.

From the foregoing definitions, it would appear that a carpenter would easily fall within the definition of a "mechanic" for purposes of the Virginia statute. However, the trustee argues that although the debtor had been a carpenter for many years, he had changed occupations to become a general contractor and that a "general contractor" is not a mechanic within the terms of the Virginia statute.

The unrebutted testimony of the debtor at the hearing was that at the time of the filing of his Chapter 11 petition in bankruptcy he was a contractor. The debtor himself defined a contractor as "a carpenter who goes into business for himself to work on contracts other than working by the hour for another contractor." The crux of the trustee's argument is that a debtor may not have two occupations and if a debtor is a contractor, he cannot also be a carpenter. This Court has previously had occasion to rule in *In re Samuel*, 36 B.R. 312 (Bankr.E.D.Va.1984) that "[f]or purposes of the exemption statutes a debtor may claim occupationally-related exemptions in *Va.Code* § 34–26 only in his or her principal occupation. A debtor may claim only one principal occupation." *Id.* at 314.

In the *Samuel* case, this Court was considering a debtor's change of occupation from the home construction and remodeling business to the crabbing business. The exemption at issue in that case was for a Chesapeake deadrise workboat valued in the amount of $1,500. This Court found in that case that the debtor had not unequivocably intended to change occupations from home construction to crabbing and as such could not exempt the workboat since his principal occupation was that of construction.

In accordance with *Samuel*, the Court must determine the debtor's principal occupation. In order for the Court to find that the debtor is a general contractor and not a carpenter, there must be some evidence that those endeavors are mutually exclusive occupations and that the debtor intended to abandon his prior occupation of carpenter for the new one of contractor. In *Samuel*, the occupations of home construction and crabbing were totally unrelated. This Court does not believe that the *Samuel* decision would bar a finding in this case that the debtor should be permitted to exempt the tools of his trade used in carpentry if the Court can find that a debtor may be both a carpenter and a general contractor and still retain his principal occupation as carpenter.

This Court finds that being a carpenter and a general contractor are not necessarily mutually exclusive occupations. The Court is required to look at the facts and circumstances of each case to determine whether a debtor who desires to exempt his tools of the trade as a carpenter is actually performing carpentry work as his principal occupation. In this case, the debtor testified that not only did he supervise generally the work of his employee carpenters, but he also performed carpentry work himself. Among the items which the debtor testified that he routinely performed included the "laying off" of all his projects, doing the offsets for the footings, inspecting the concrete, and doing the "set-back" and line requirements among other things. The debtor also testified that if work was delayed for whatever reason, he would also perform additional carpentry work where necessary to insure that the project met its scheduled completion dates. Although the debtor testified that he supplied carpentry

tools to his employees for the performance of their duties and called himself a "contractor," he also testified that he was a carpenter and had been so all his life. The debtor did not list in his schedules in March, 1985 when the case was converted to Chapter 7 that he was a general contractor, rather the debtor listed as he had done when the Chapter 11 was initially filed that his business was that of construction. The words "carpenter" or "general contractor" are not used in the debtor's statement of financial affairs.

■ In this case, the Court is not required to determine whether a general contractor is a "mechanic" within the meaning of the Virginia statute. The Court only finds that this debtor was and is essentially a carpenter and that whatever supervisory responsibilities the debtor may have assumed by going into business for himself should not work to defeat the debtor's claimed exemptions absent any evidence that the debtor had abandoned his principal occupation. The Court cannot say that the debtor abandoned his principal occupation, *i.e.*, carpenter, when he formed his construction business. The unrebutted testimony is that as a result of the bankruptcy and demise of B.K. Allen Builders, the debtor has returned to carpentry work exclusively. As this Court quoted in *Samuel:*

> ... A new business, embarked in as an experiment merely, might temporarily produce more, and require more personal attention, than the old, and yet the latter be one's principal occupation because most relied on or looked to for a livelihood, and the one that would be held onto if compelled to abandon either.

*Id.* at 315 (citing *Smalley v. Masten,* 8 Mich. 529, 531, 77 Am.Dec. 467 (1860)). In this case, the debtor's principal occupation is that of carpenter because it is the one most relied on by the debtor and the one that the debtor has held onto since being compelled by bankruptcy to abandon the other.

Having found that the debtor is a carpenter, and, therefore, a mechanic qualified to exempt the tools of his trade under Virgin-ia Code § 34–26, the Court must determine whether the proposed exemptions are proper. In this regard the trustee argues that the debtor's power tools are not "tools" or "utensils" entitled to an exemption under the Virginia statute. Consequently, the trustee objects to the debtor's exemption of 1 Rockwell tablesaw, 1 Rockwell 6-inch jointer, 1 Craftsman bandsaw, 1 pump, 1 wheelhorse tractor and trailer, 2 space heaters, 1 bottle gas heater, 1 10-inch skillsaw, 1 Black & Decker 7-inch skillsaw, 1 Rockwell 7-inch skillsaw, 1 7-inch skillsaw, 1 lock boring kit, 1 Rockwell router, 3 Rockwell electric drills, 8 Safeway pump jacks, 1 cement finish machine, 1 Poulan chainsaw, 1 generator, 1 Kohler generator, 1 Rockwell belt sander, 1 sabre-jig saw, 1 Black & Decker hammerdrill, 1 Remington stud gun, 1 Toro lawn mower, 1 Toro tiller, a compressor and nailing machine, 1 Sears 7-inch table saw, and 1 Bosh drill.

■ The Court has previously found that the Virginia legislature intended that the words of the Virginia statute be construed in accordance with their plain and ordinary meaning. A "tool" is defined in The American Heritage Dictionary of the English Language (new college ed. 1980) in pertinent part as "[a]n instrument, such as a hammer or rake, used or worked by hand.... A machine, such as a lathe, used to cut and shape machinery parts; machine tool.... Anything regarded as necessary to the carrying out of one's occupation or profession." *Id.* at 1353. From the foregoing definitions, the Court is convinced that power tools such as those objected to by the trustee may be considered tools within the meaning of the Virginia statute such that a carpenter could exempt drills, saws, and other equipment necessary to the carrying out of his occupation. To hold otherwise would eviscerate the exemption and run counter to the well-settled principal of construction that exemption statutes are to be liberally construed in favor of the debtor and that where doubt exists as to an exemption, the Court should resolve the doubt in favor of the exemption. *See In re*

*Perry,* 6 B.R. 263, 264 (Bankr.W.D.Va. 1980).

However, the inquiry does not end here. This Court has previously had occasion to hold in *In re Quidley,* 39 B.R. 362 (Bankr. E.D.Va.1984) that where there is a dispute as to the items which constitute tools and utensils of the debtor's trade for purposes of the poor debtor's exemption, the Court will look to see whether "the item claimed to be exempt [is] reasonably necessary both in kind and in quality for the workman to perform his chosen craft in an efficient and competent manner." *Id.* at 367 (citing *In re Reed,* 18 B.R. 1009, 1010 (Bankr.W.D.Ky.1982)). In this regard the Court stated that it would be impermissible to allow duplication of tools since the purpose of the exemption statute is "to set forth and protect the basic tools and utensils in order to aid the debtor in continuing in his means of livelihood" and not to "[guarantee] to the mechanic each and every possible and potential tool that can be used to set up the perfect workshop." *Quidley,* 39 B.R. at 367.

The Court finds that many but not all of the items listed as tools of the trade in the debtor's schedules excluding the three vehicles in question are reasonably necessary tools and utensils of the carpenter's trade thus satisfying the *Quidley* test. However, some of the items listed are not what this Court considers to be reasonably necessary for a carpenter to pursue his trade and there is some duplication of exemptions which should be denied. Accordingly, the Court should sustain the trustee's objection and deny the debtor's exemption of the wheelhorse tractor and trailer, 1 space heater, 1 Black & Decker 7-inch skillsaw, 2 Rockwell electric drills, 6 Safeway pump jacks, 1 Poulan chainsaw, 1 Kohler generator, 1 Rockwell miterbox saw, 4 Safeway scaffold bucks, 2 walkboards, 1 wheelbarrow, 1 Toro lawn mower, and 1 Toro tiller.

The remaining issue to be decided is whether the three vehicles claimed exempt by the debtor qualify as an exemption as tools of the debtor's trade. It is clear from the testimony of the debtor that the auto-mobile listed as a 1975 Lincoln cannot be found exempt as a tool of the trade because the automobile was not used in the debtor's business but rather as the debtor's wife's personal car. With respect to the 1978 Jeep Wagoneer and 1981 E–100 Van each valued at $3,100, this Court is also of the opinion that neither automobile may be exempted by the debtor under Virginia Code § 34–26 as a "tool or utensil of [the debtor's] trade."

In the case of *In re Williams,* 39 B.R. 944 (Bankr.W.D.Va.1984), the bankruptcy court in construing Virginia Code § 34–26 found that a radio salesman who used a 1979 Chevrolet as his sole means of transportation in his job which required extensive travel was not a tool of the trade within the meaning of the Virginia statute. The court relied on its earlier case of *In re Dummitt,* 2 B.R. 136 (Bankr.W.D.Va.1980). In *Dummitt,* the bankruptcy court was asked to decide whether a traveling salesman who as part of his job traveled throughout the southeastern United States could exempt under Virginia Code § 34–26 a 1977 Pontiac which was admittedly essential to his work. The court examined decisions in other jurisdictions which found an automobile to be a tool or utensil of the trade, but distinguished those cases on grounds that the Virginia statute requires an additional determination be made, *viz.,* that the debtor exempting the automobile be a mechanic. The court could not find that a traveling salesman qualified as a mechanic. In addition, the court found that the Virginia legislature had amended § 34–26 several times to include specific exemptions but had never included an automobile within the confines of that section. The court found that the inability to classify a traveling salesman as a mechanic and the failure of the Virginia legislature to specifically include an automobile within the terms of § 34–26 was fatal to the debtor's claimed exemption.

The case at bar is distinguishable from *Dummitt* but the result is the same. Here the debtor is a carpenter and qualifies as a mechanic under the terms of § 34–26.

However, neither the jeep nor van can be classified as reasonably necessary for the debtor to perform his chosen craft in an efficient and competent manner in accordance with the *Quidley* test. The trade of a carpenter is to build or construct. Only those tools that are necessary to a carpenter are exemptable under § 34–26. Two automobiles have only an indirect relation to the carpentry work. To allow this exemption would be to allow any mechanic to exempt the automobiles and vehicles used to store tools or commute back and forth to a particular job. This Court cannot conceive that the Virginia legislature intended such an expansive definition of the term "tools of the trade." If the Virginia legislature desires to include automobiles as an appropriate exemption under the poor debtor's statute, it is privileged to do so but this Court is not privileged to rewrite the statute at the behest of debtors. Accordingly, the Court should deny the debtor's claimed exemption of all three vehicles.

In summary, the Court finds that the debtor's principal occupation is that of a carpenter and that a carpenter qualifies as a "mechanic" under Virginia Code § 34–26. The expansive list of the debtor's tools of trade would appear from the Court's observation to be duplicitous and beyond that which is reasonably necessary for a carpenter in the ordinary course of business and to that extent this Court would disallow the debtor's claimed exemptions. Therefore, the Court should sustain the trustee's objection to the debtor's claim of exemption to the wheelhorse tractor and trailer, 1 space heater, 1 Black & Decker 7-inch skillsaw, 2 Rockwell electric drills, 6 Safeway pump jacks, 1 Poulan chainsaw, 1 Kohler generator, 1 Rockwell miterbox saw, 4 Safeway scaffold bucks, 2 walkboards, 1 wheelbarrow, 1 Toro lawn mower, and 1 Toro tiller. In addition, the Court finds for the reasons heretofore stated that the debtor's three vehicles are not properly exemptable under the Virginia poor debtor's statute and the trustee's objection to those exemptions should also be sustained. In all other respects, the trustee's objection

should be denied and the exemptions allowed.

The parties are directed to submit an Order in conformity with this Opinion.