**In re Joseph H. NEWSOME, Linda D. Newsome, Debtors.**

**FLEET BROS., INC., Plaintiff,**

**v.**

**Joseph H. NEWSOME, Defendant.**

Adv. No. 86–0035–R.

Bankruptcy No. 85–01922–R.

United States Bankruptcy Court, E.D. Virginia.

April 2, 1986.

James R. Sheeran, Richmond, Va., for plaintiff.

Bruce E. Arkema, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the objection of Fleet Bros., Inc. ("Fleet Bros.") to certain exemptions claimed by the debtors in the above-styled case, Joseph H. and Linda D. Newsome ("Newsomes"). This matter was heard at a hearing convened on February 13, 1985, along with a motion for relief from stay filed by Fleet Bros. in order to recover certain of the items claimed as exempt. As some question arose as to the availability of the exemptions to the Newsomes, and also to the specific items claimed as exempt, this matter was taken under advisement. The parties have filed briefs on the matter, and based upon the arguments of counsel and the evidence adduced at the hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Newsomes filed a petition for relief under Chapter 7 of Title 11 of the United States Code on November 21, 1985, and they received their discharge in bankruptcy on March 4, 1986. The Newsomes are the proprietors of a farm in Heathsville, Virginia, and the debts which precipitated the filing of their petition appear to have arisen primarily from their farming operation. Mr. Newsome also operates a barbershop and Mrs. Newsome currently works for a local attorney; however, at the time of filing their petition in bankruptcy the primary occupation of the family was the operation of the farm.

In the Newsomes' schedule of property claimed as exempt, certain farm implements are listed as properly exempted under *Va.Code Ann.* § 34–27 (1984 Repl. Vol.). Section 34–27 provides:

*Additional articles exempted to householder engaged in agriculture.*—If the householder be at the time actually engaged in the business of agriculture, there shall also be exempt from such levy or distress, while he is so engaged, to be selected by him or his agent, the following articles, or so many thereof as he may have, to wit: a pair of horses or mules unless he selects or has selected a horse or mule under the preceding section (§ 34–26), in which case he shall be entitled to select under this section only 1, with the necessary gearing, 1 wagon or cart, 1 tractor, not exceeding in value $3,000, 2 plows, 1 drag, 1 harvest, cradle, 1 pitchfork, 1 rake, 2 iron wedges and fertilizer and fertilizer material not exceeding in value of $1,000.

Among the items listed as exempt under § 34–27 are a Massey Ferguson Model 730 "plow/disc" and a Hazelwood stock trailer. Fleet Bros. asserts non-possessory, non-purchase money security interests in both items. The Newsomes have contended that the "plow/disc," which was sold as a disc, is a plow within the contemplation of § 34–27 and that the stock trailer is tantamount to a wagon or a cart. In addition, the Newsomes have claimed an 8 row no til planter as exempt under *Va.Code Ann.* § 34–4 (1984 Repl.Vol.),[1] and the planter was included in their joint homestead deed.

---

1. Va.Code Ann. § 34–4 (1984 Repl.Vol.)

Exemption created.—Every householder or head of a family residing in this State shall be entitled, in addition to the property or estate which he is entitled to hold exempt from levy, distress or garnishment under §§ 34–26, 34–27 and 34–29, to hold exempt from levy, seizure, garnishment or sale under any execution, order or process issued on any demand for a debt or liability on contract, his real and personal prop-

On January 17, 1986, Fleet Bros. filed an objection to the Newsomes' claim of exemptions with regard to the disc and the stock trailer. The basis of Fleet Bros.' objection is that the disc is not a plow as intended by § 34–27 and that the stock trailer is not a wagon or cart. At the same time the objection to the claim of exemptions was filed, Fleet Bros. filed a motion for relief from the automatic stay of 11 U.S.C. § 362 in order to recover the stock trailer and the 8 row no til planter. Fleet Bros. also sought to recover a Massey Ferguson tractor and an IHC baler; however, by a consent order entered by this Court on March 10, 1986, Fleet Bros. has been granted relief with respect to the latter two items.

John Fleet, Jr., president of Fleet Bros., testified at a hearing convened on the objection to the claim of exemptions and the motion for relief from stay on February 13, 1986 that Mr. Newsome pledged the stock trailer, baler, and no til planter as additional collateral to secure the financing of the Massey Ferguson tractor. A copy of the installment note and financing statement covering the collateral, both dated August 6, 1985, were submitted into evidence. Fleet testified that the balance due on the note at the time the filing of the Newsomes' petition was approximately $8,017.50.

The crux of Fleet Bros.' objection to the Newsomes' claimed exemption of the disc is that, by a strict reading of § 34–27 of the Virginia Code, no provision is made for the exemption of a disc. Fleet, qualified as an expert on the function and uses of farm equipment, testified that a plow is pulled through the soil and the effect that it has is that it penetrates anywhere from 6 to 12 inches and it flips the soil over. On the other hand, a disc is primarily a leveling tool used to smooth the earth once the ground has been broken. It does not turn the soil over, although it can penetrate 6 to 10 inches. Fleet further testified that a plow is characterized by the presence of a moldboard, the plow blade, while a disc carries a series of convex blades that chop up the earth and mix the "trash" on top of the ground with a mulching effect. Nevertheless, Fleet indicated that a disc could be run over land that had not been plowed to prepare it for planting.

Newsome testified that he has a plow, but he has forsaken the plow in favor of the disc. Due to extreme drought conditions in the area where the Newsomes' farm is located, persistent for several years, the ground has been too hard to use a moldboard plow. Newsome asserts that he uses the disc in question to break up the soil, then after smoothing the surface, he can use his planter. According to Newsome the use of the disc, rather than the plow, is more conducive to farming in hard soil conditions.

With regard to the Hazelwood stock trailer, Fleet Bros. has contended that Newsome uses the trailer to take his livestock to market and to transport hay and feed. Newsome testified that he uses the trailer specifically for this purpose, the nearest livestock market being located in Fredericksburg, Virginia. Without the trailer, Newsome would have no other means of transporting his livestock other than using the pick-up truck with which he currently tows the trailer. Given the fact that the trailer is used for livestock, Fleet Bros. has challenged whether Newsome is actually engaged in the "business of agriculture" as contemplated in § 34–27. Newsome testified that last year he made more money selling livestock than he did selling crops. Newsome stated that he sold 10 to 12 beef cattle, 18 to 20 feeder steers, and 40 to 50 hogs in 1985.

Additionally, Fleet Bros. asserts that the trailer is not a "wagon" or "cart" within the meaning of the statute. Reading the statute as a whole, Fleet Bros. asserts that the legislature intended that an individual engaged in agriculture should be restricted to a vehicle that could be pulled behind a

erty, or either, to be selected by him, including money and debts due him, to the value of not exceeding $5,000. The word "debt," as used in

this title, shall be construed to include a liability incurred as the result of an unintentional tort.

horse, mule, or tractor on the farm itself. There is no testimony that Newsome uses the trailer with his tractor, rather, by its description, it can only be pulled by truck and it is equipped for highway use.

As a final point, Fleet Bros. has contended that the debtors are barred from filing a motion to avoid their lien under 11 U.S.C. § 522(f)(2)(B) because they had not done so prior to the hearing on the objection to exemptions or the motion for relief from stay. In addition, the question has been raised as to whether or not Fleet Bros. is entitled to attorneys' fees since a motion to avoid the liens was filed after Fleet Bros.' objection and motion for relief from stay.

## CONCLUSIONS OF LAW

Given the fact that Newsome's ability to exempt the disc and the stock trailer turns on an interpretation of *Va.Code* § 34–27, the initial question for determination is whether or not Newsome is a "householder ... actually engaged in the business of agriculture." The term "agriculture" is not defined in § 34–27, nor is it expanded upon in the case law interpreting the section.

■ Under Virginia law, "if the language of a statute has a definite and precise meaning, expressed in clear and precise terms, so that the sense is manifest, [the court interpreting the statute is] required to adopt the sense which it naturally presents." *In re Allen,* 52 B.R. 206, 208 (Bankr.E.D.Va.1985) *citing Miller v. Commonwealth,* 172 Va. 639, 648, 2 S.E.2d 343, 347 (1939). Thus, as *Allen* indicates, words in a statute should be given their plain and ordinary meaning unless the statute is ambiguous or it is apparent the words are used by the legislature as words of art. *Allen,* 52 B.R. at 208. An additional point to consider is that the Virginia Supreme Court has stated that when construing homestead laws, a court should adopt a liberal construction in order to protect the debtors and their families. *In re Smith,* 22 B.R. 866, 867 (Bankr.E.D.Va.1982); *see Home Owners Loan Corporation v. Reese,* 170 Va. 275, 196 S.E. 625, 626 (1938).

First, the term "agriculture" is defined in *Websters New Collegiate Dictionary* (1975) as "the science or art of cultivating the soil, producing crops, and raising livestock...." In addition, *Black's Law Dictionary* (4th Ed.) provides that agriculture is

The art or science of cultivating the ground, including the harvesting of crops, and in a broad sense, the science or art of production of plants or animals useful to man, including in a variable degree, the preparation of these products for man's use.

■ It is clear that "agriculture" is not confined solely to the raising of crops. Even if it were, Newsome testified that last year he cultivated approximately 500 acres of land, and in 1986 he contemplates planting over 400 acres. The fact that he derived the greater part of his farm income from the sale and transportation of livestock does not take him outside the exemption section's definition of one "engaged in the business of agriculture." The court concludes, therefore, that Newsome is eligible for the exemptions provided for by *Va. Code* § 34–27.

■ With regard to Fleet Bros.' objection to the claimed exemption of the disc, and its assertion that the disc is not technically a plow, the Court keeps in mind the liberal construction intended for homestead laws as mentioned previously. *Webster* defines a plow as "(1) an implement used to cut, lift, and turn over soil esp. in preparing a seedbed (2) any various devices operating as a plow." The Court finds persuasive Newsome's testimony that the disc is the only device he currently has to prepare the ground for planting. The testimony indicated that given the hard soil conditions in the area where Newsome farms, the moldboard plow is unusable, and the disc is the only farm implement he has which will allow him to get his crops in ground. Given that the statute allows an exemption for two plows, it may reasonably be concluded that a farmer may need more than one type of plow to till the soil in varying conditions.

The fact that the disc does not turn over the soil as a plow might is not dispositive of whether or not Newsome may claim it as exempt. The Court finds that the legislature intended an exemption for a farm implement that a farmer can use to get his land ready for planting, and at the present Newsome would be unable to till his land in a manner satisfactory to him without the use of the disc as a plow. For that reason, the Court finds that Newsome may properly claim the disc as exempt under § 34–27.

▊ The Court also finds that the Hazelwood stock trailer is exempt as a "wagon or cart" within the contemplation of the statute. Newsome testified that he uses the trailer to transport his livestock to market for sale, and as the nearest livestock market is in Fredericksburg, Virginia, he has in reality no other way to get his animals to market. Although Newsome testified that he could conceivably put his cattle and hogs in the back of his pickup truck, the exemption statute provides for the exemption of a "wagon or cart," and it appears that § 34–27 intends that a farmer be allowed to exempt a piece of equipment which he needs to transport his commodities. Although Fleet Bros. argues that the statute contemplates an exemption for a vehicle pulled by a tractor, given the advances and changes in farming since the statute was originally drafted, it is apparent that a farmer may not be able to transport his goods to market by tractor today. The Court acknowledges that this is a liberal interpretation of the statute's terms; however, as mentioned earlier, such is the analysis the Virginia courts have adopted. *See Smith, supra* at 867.

▊ Having determined that the disputed property may be claimed as exempt under *Va.Code* § 34–27, the issue was raised as to whether or not the debtors may avoid the liens against the property under 11 U.S.C. § 522(f)(2)(B) because they had not done so prior to the hearing on

Fleet Bros.' motion for relief from the automatic stay. The cases addressing the timeliness of a debtor's motion to avoid a lien properly avoidable under § 522(f) have noted "that Congress put no time limit on lien avoidance actions and [the cases] inferred that Congress thus intended that they be available even post-discharge." *Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 n. 3 (4th Cir.1984); *see e.g. Matter of Montney,* 17 B.R. 353 (Bankr.E. D.Mich.1982); *In re Newton,* 15 B.R. 640 (Bankr.W.D.N.Y.1981). Given the fact that at the time Fleet Bros. voiced its objection to the debtor's intention to avoid its lien the debtors had not received their discharge in bankruptcy, Fleet Bros.' objection is not well taken.

This Court previously held in *In re Webb,* 49 B.R. 646, 652 (Bankr.E.D.Va.1984) that in order to preclude a debtor from being able to avoid a lien under § 522(f) post-discharge, a creditor would have to demonstrate hardship or inequitable conduct by the debtor in connection with the debtor's delay. No evidence of either grounds has been presented to the Court at this time, and as the avoidance relief that the debtors seek is clearly available post-discharge absent such a showing, the mere fact that an objection to a claim of exemption and a motion for relief from stay have been filed, both prior to discharge, does not bar the debtor from exercising the rights contained under § 522(f).

Additionally, given that the Newsomes are not barred from seeking avoidance of Fleet Bros.' liens, and given that an avoidance action was instituted shortly after the hearing on Fleet Bros.' objection and motion for relief from stay,[2] the timeliness of the Newsomes' avoidance action was with such promptness that the Court deems an award of attorney's fees to Fleet Bros. to be unwarranted.

An appropriate Order will issue.

2. The Newsomes filed a motion to avoid the liens of Fleet Bros. on the items claimed as exempt on February 18, 1986. As noted previously, the Newsomes' petition was filed on No-

vember 21, 1985, and the objection to the claim of exemptions and the motion for relief from the automatic stay were filed by Fleet Bros. on January 17, 1986.