**In re William Michael WEINSTEIN, Debra Dee Weinstein, Debtors.**

**Bankruptcy No. 94–14549–AM.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

May 2, 1995.

Roy B. Zimmerman, Alexandria, Virginia, for debtors.

Donald M. Fishman, Fairfax, Virginia, for creditor, Norwest Financial Colorado, Inc.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtors' motion for reconsideration of an order denying their motion to avoid a security interest in a 1986 Ford truck. The only dispute is whether the truck is exempt as a tool of the husband's trade.

### Procedural History

The debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on November 30, 1994. Among the assets listed on their schedules was a jointly-owned 1986 Ford F350 pickup truck valued at $3,500. Of this amount, a nominal $2.00 was claimed as exempt under the Virginia homestead exemption (§ 34-4, Code of Virginia), and $2,000.00 under the automobile component of the Virginia "poor debtor's" exemption (§ 34-26(8), Code of Virginia).

On February 6, 1995, the debtors filed a motion under Section 522(f) of the Bankruptcy Code to avoid a security interest held by Norwest Financial Colorado, Inc. ("Norwest") on the Ford pickup truck, alleging that Mr. Weinstein "did at the time of the filing of the bankruptcy and does currently" use the truck "as a necessary tool of his trade as a heating and air-conditioning mechanic." Norwest filed a response denying that the truck was a tool of the trade. The debtors subsequently filed amended schedules B (Personal Property) and C (Property Claimed as Exempt) on March 9, 1995, increasing the value of the truck to $4,500 and claiming it as exempt as a tool of the trade under § 34-26(7), Code of Virginia.

An evidentiary hearing was held on March 14, 1995. At the conclusion of the hearing, the court found that, at the time the debtors filed their petition, the husband's occupation or trade was that of an air conditioning and heating mechanic. On the authority of *In re Allen*, 52 B.R. 206 (Bankr.E.D.Va.1985) (Shelley, J.), however, the court ruled that the truck did not constitute a tool of the trade, and an order was signed on March 14, 1995, and entered on the docket on March 21, 1995, denying the motion to avoid Norwest's lien. On March 23, 1995, the debtors filed the present motion for reconsideration. Argument was heard on April 25, 1995, at which time the court took the motion under advisement.

### Findings of Fact

The debtor testified that he had served in the Army for 20 years in the field of mechanical maintenance, with most of his experience in the field of heating and air conditioning. While stationed in Colorado, he had borrowed money from Norwest and had given as

collateral a security interest in the truck.[1] At that time, he did not use the truck in his work. After retiring from the Army, he moved to Northern Virginia and worked as a heating and air conditioning mechanic for approximately six months for one company and then eight months for another. While working for those companies, he was not required to use the truck in his employment. He lost his job approximately four days prior to the chapter 7 filing. On the schedules of income and expenses, he listed his occupation on the filing date as "unemployed," and showed no current income from any source other than his Army retirement income. The statement of financial affairs, however, did show earnings from employment of $41,791 for 1994 through the date of filing. As noted above, the schedules originally filed claimed no exemption for tools of the trade.

In December 1994, soon after the chapter 7 petition was filed, the husband started "moonlighting" as a heating and air conditioning mechanic. He earned approximately $75 in December and $900 in January for such work. He testified he plans to continue working for himself as a heating and air conditioning mechanic and that to do so he needs the truck in order to haul water heaters, tools,[2] and other materials to the job site. At the time of the hearing, the truck was in the shop undergoing warranty work.

### Conclusions of Law

This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The debtor's motion for reconsideration, which the court treats as a motion under Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59(e) to alter or amend the order of March 14, 1995, was filed within 10 days of the entry of the order on the docket and is therefore timely.

Under Section 522(f)(1) of the Bankruptcy Code, a debtor

> may avoid the fixing of a lien upon the interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)], if such lien is—
>
> \*     \*     \*     \*     \*     \*
>
> (B) a nonpossessory, nonpurchase-money security interest in any—
>
> \*     \*     \*     \*     \*     \*
>
> (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

This right is subject to certain limitations as set forth in Section 522(f)(3):

> In a case in which State law that is applicable to the debtor—
>
> \*     \*     \*     \*     \*     \*
>
> (B) \* \* \* prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;
>
> the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor \* \* \* to the extent the value of such implements, professional books, [and] tools of the trade \* \* \* exceeds $5,000.

The schedules originally filed by the debtors did not assert that the truck was a tool of the husband's trade. Instead, a nominal $2.00 value was claimed as exempt under the Virginia homestead exemption and $2,000.00 under § 34–26(8), Code of Virginia, the automobile component of the "poor debtor's" exemption.[3] After the filing of the lien avoid-

---

1. The debtors' motion alleges, and the creditor does not deny, that the original loan amount was $6,660.09. The debtors' schedules reflect that the debt, at the time of filing, was $4,800.00. The truck is not shown as being subject to any other liens.

2. Oddly enough, the amended schedules claim no exemption under tools of the trade for "tools" in the everyday sense of that term. The only item claimed exempt as a tool of the trade is the debtor's truck.

3. " \* \* \* every householder shall be entitled to hold exempt from creditor process the following

ance motion, the debtors then amended their schedules to claim the truck as a tool of the husband's trade under § 34–26(7), which exempts

> Tools, books, instruments, implements, equipment, and machines, *including motor vehicles,* vessels, and aircraft, which are necessary for use in the course of the householder's occupation or trade not exceeding $10,000 in value, except that a perfected security interest on such personal property shall have priority over the claim of exemption under this section. *A motor vehicle, vessel or aircraft used to commute to and from a place of occupation or trade and not otherwise necessary for use in the course of such occupation or trade shall not be exempt under this subsection.* "Occupation," as used in this subdivision, includes enrollment in any public or private elementary, secondary, or vocational school or institution of higher education.

(emphasis added). Although the Virginia statute clearly grants a perfected security interest priority over the claim of exemption, the provisions of Section 522(f)(3) of the Bankruptcy Code nevertheless permit a debtor to avoid a nonpurchase-money security interest as long as the value of the property does not exceed $5,000. The debtors' amended schedules place a value of $4,500 on the truck, and Norwest has not disputed that valuation. Additionally, it is clear on the face of the statute that in Virginia a motor vehicle may constitute a tool of the trade. Accord-

ingly, the question before the court is whether the truck is "necessary for use" in the course of the debtor's occupation or trade.[4]

■ At the outset, it is well settled in Virginia that exemption statutes are to be liberally construed in favor of the debtor. *Tignor v. Parkinson (In re Tignor),* 729 F.2d 977, 981 (4th Cir.1984), citing *South Hill Production Credit Ass'n v. Hudson,* 174 Va. 284, 6 S.E.2d 668 (1940) and *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 187 S.E. 449 (1936). Prior to the 1990 amendments to § 34–26, Code of Virginia, a number of courts had ruled that debtors could not exempt motor vehicles as tools of the trade under the statute as it then read.[5] *See, In re Dummitt,* 2 B.R. 136 (Bankr.W.D.Va.1980) (travelling salesman's automobile not tool of the trade); *Associates Financial Services Co. v. Williams,* 39 B.R. 944 (Bankr.W.D.Va. 1984) (salesman's automobile not tool of the trade even though used by debtor to pursue livelihood); *In re Allen,* 52 B.R. 206 (Bankr. E.D.Va.1985) (jeep and van not tools of a carpenter's trade). The 1990 amendments broadened the scope of the exemption for tools of the trade, first, by no longer restricting it to debtors who qualified as a "mechanic",[6] and second, by specifically recognizing that a motor vehicle could constitute a tool of the trade.[7]

Even as amended, however, the statute still requires that a particular tool, implement, or machine be "necessary." *See, In re*

---

enumerated items: * * * (8) A motor vehicle, not held as exempt under subdivision (7), owned by the householder, not to exceed $2,000 in value, except that a perfected security interest on the motor vehicle shall have priority over the claim of exemption under this subsection."

4. Neither party has raised or addressed the issue of whether the definition of what may be exempted as a "tool of the trade" under § 34–26–(7), Code of Virginia, is co-extensive with the category of assets with respect to which the debtor may avoid a consensual lien under § 522(f)(1)(B)(ii). The latter allows liens to be avoided only in "implements, professional books, or tools," while the former allows an exemption for a seemingly much broader group of "tools, books, instruments, implements, equipment, and machines." Unless the language of § 522(f)(1)(B)(ii) is read as automatically embracing whatever state-law exemption exists for tools of the trade, it could be

argued that an asset may be exempt under the broad rubric of § 34–26(7), Code of Virginia without necessarily being subject to lien avoidance under § 522(f), Bankruptcy Code. In view of the disposition reached on the debtors' motion, however, it is not necessary to decide this issue.

5. At that time the statute allowed "every householder residing in this State * * * to hold exempt from levy or distress the following articles * * * (5) * * * in case of a mechanic, the tools and utensils of his trade."

6. The opinions in *Dummitt* and *Williams* had both relied in part on a determination that a salesman was not a "mechanic."

7. The language excluding motor vehicles used solely for commuting was added in 1992.

*Quidley,* 39 B.R. 362, 367 (Bankr.E.D.Va. 1984) (Shelley, J.), where this court held that the test was "whether 'the item claimed to be exempt [is] reasonably necessary both in kind and in quality for the workman to perform his chosen craft in an efficient and competent manner'" and that "the purpose of the exemption statute is 'to set forth and protect the basic tools and utensils in order to aid the debtor in continuing in his means of livelihood' and not to '[guarantee] to the mechanic each and every possible and potential tool that can be used to set up the perfect workshop.'" The Fourth Circuit, in an opinion predating the 1990 amendment to § 34–26, observed,

> Although no test has emerged, the standard applied by the courts appears to be whether the items are "specially suited" to business use or peculiar to the trade of the debtor.

*Dominion Bank v. Nuckolls,* 780 F.2d 408 (4th Cir.1985) (remanding for factual determination by bankruptcy court whether restaurant stove, sinks, deep fryer, tables, booths and various other items were tools of debtors' trade as restauranteurs). In the *Nuckolls* case the Fourth Circuit cited, with apparent approval, the decision in *In re Metzig,* 33 B.R. 620 (Bankr.N.D.Tex.1983), which had allowed a debtor in the business of remodelling buildings to avoid liens on saws, air compressors, spray rigs, staple guns, and welding equipment, but not on a pickup truck, lumber inventory, and office furniture and equipment. *But see, In re Ottoway,* 169 B.R. 581 (Bankr.E.D.Va.1994) (Tice, J.) in which this court declined to "second guess" the debtor on the issue of necessity in the absence of evidence by the secured party that certain farm machinery and equipment was not necessary.

▮ Norwest has argued that the tool of the trade exemption is not available to the debtors because the truck was not a tool of the husband's trade either at the time the security agreement was entered into or, since he was then unemployed, on the date he filed his petition. The rule seems clear, however,

that the relevant point in time for determining whether an asset is a tool of the trade is the date a debtor files his or her bankruptcy petition,[8] not the date the security interest was created, and that "a temporary abatement of work in the trade may not be fatal to the claimed exemption for tools of the trade * * * in the absence of an intentional abandonment of the trade by the debtor." *Flick v. Farmers Home Administration,* 47 B.R. 440, 443 (W.D.Pa.1985), quoted with approval in *Meadows v. Farmers & Merchants Nat'l Bank (In re Meadows),* 75 B.R. 357 (W.D.Va. 1987).

▮ The issue of "necessity" is by definition fact-dependent. *In re Allen, supra,* upon which this court relied in originally denying the debtors' motion, examined a carpenter's claimed exemption for a jeep and a van in the context of the far more restrictive language of then § 34–26(5), which permitted only "tools and utensils" to be exempted. The court in *Allen* found that the two vehicles had "only an indirect relation to carpentry work" and that to construe the vehicles as tools of the trade would "allow any mechanic to exempt the automobiles used to store tools or commute back and forth to a particular job." *Id.* at 212. As amended, the statute now exempts a much more broadly-defined class of assets including, potentially, a motor vehicle, unless its nexus to the debtor's trade or occupation is solely that the debtor uses it for commuting. To that extent, therefore, this court agrees with the debtors that *Allen* should not be considered dispositive of the present case.

▮ This court has found that the husband, on the date he filed his bankruptcy petition, was a temporarily unemployed heating and air conditioning mechanic. That finding, however, does not end the inquiry. Prior to the filing, the husband worked for companies that supplied the trucks used to haul tools and equipment to the job site, and the debtor's pickup truck, even if he had used it to get himself to the site, would not, because of the exclusion in § 34–26(7) for vehicles "used to commute to or from a place

---

8. There is authority, however, that where a case is converted from chapter 11 to chapter 7, the relevant date is the date of conversion, not the original filing date. *Matter of Patterson,* 825 F.2d 1140 (7th Cir.1987).

of occupation," have qualified as a tool of the trade. In short, while the husband, on the date of filing, was an air conditioning and heating mechanic, he was not by trade or occupation a *self-employed* air conditioning and heating mechanic. It was only after the petition was filed that he began, in his own words, to "moonlight" by working on his own. The use of the term "moonlight" is suggestive that the husband considered such self-employment as temporary, even though subsequently it has become his sole method of earning a living. Accordingly, even conceding, as the husband testified without contradiction, that in his present circumstances the truck is needed to haul tools, water heaters, and other materials to the job site, and is therefore necessary for use in his occupation as he currently practices it, such required use is one arising after the date the debtor filed his petition and not inherent in the way he habitually practiced his craft up until the time he filed his petition. This conclusion is buttressed by the fact that the debtors themselves evidently did not, when they filed their petition, consider the truck to be a tool of the husband's trade, since they did not exempt it as such on the schedules filed with the petition. Accordingly, the court is unable to conclude that the truck was "necessary" to the husband's trade or occupation as a heating and air-conditioning mechanic on that date, even though it may have become so subsequently. That being the case, the debtors were not on that date entitled to exempt the truck under § 34–26(7), Code of Virginia, and Norwest's security interest does not therefore impair an exemption to which the debtors are entitled. Accordingly, the court, although for different reasons than originally announced, concludes that Section 522(f) of the Bankruptcy Code may not be used to avoid Norwest's consensual, nonpurchase-money security interest, and the motion to alter or amend the order of March 14, 1995 will be denied.

An order consistent with this opinion will be filed this date.