**In re Everett Ray DUVALL and Karen Sprawls Duvall, Debtors.**

**No. 97–51823–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 13, 1998.

Craig A. Gargotta, Assistant United States Attorney, San Antonio, TX, for United States of America, Farm Service Agency.

## OPINION

RONALD B. KING, Bankruptcy Judge.

Everett Ray Duvall and Karen Sprawls Duvall ("the Debtors") filed a "Motion to Avoid Non–Possessory, Non–Purchase Money Security Interest" of the United States of America, Farm Service Agency ("FSA"), in the Debtors' tools of the trade pursuant to § 522(f) of the Bankruptcy Code. For the reasons stated below, the Court concludes that while § 522(f)(1) and (f)(2) tentatively allow the Debtors to avoid the FSA's security interest in full, § 522(f)(3) limits that avoidance by a defined amount: the difference between the aggregate value of the Debtors' tools of the trade and $5,000.

## I. FACTS

The Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 7, 1997. Thereafter, the Debtors elected the exemptions available under Texas law and claimed as exempt property certain tools of the trade valued in their schedules at $55,287. The FSA timely filed a proof of claim in the amount of $167,289.84. The FSA has a valid nonpossessory, nonpurchase-money security interest in the Debtors' tools of the trade pursuant to a written security agreement signed by the parties. On August 4, 1997, the Debtors filed this motion to avoid the FSA's security interest pursuant to § 522(f) of the Bankruptcy Code. In their motion and at the hearing, the Debtors argued that they should be allowed to avoid the security interest in full pursuant to § 522(f) of the Bankruptcy Code.[1] The FSA, in contrast, argued that § 522(f)(3) prohibits avoidance of liens on tools of the trade if the value

Jeffrey Harbin Conner, Lubbock, TX, for debtors.

---

1. The Debtors also argued at the hearing on the motion that the FSA's security interest is void because of an alleged defect in a continuation statement: Whereas the original security agreement and financing statement were executed by the United States through the Farmers Home Administration ("FHA"), the continuation statement was executed by the United States through the FSA. *See* TEX.BUS. & COM.CODE ANN. §§ 9.403(c), 9.405(b) (Vernon 1991) (providing in part that a continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment containing, among other things, the signature of the secured party of record). This issue will not be addressed because it was not raised in the motion, and because the filing of an adversary proceeding is required to determine the validity, priority, or extent of a lien. FED.R.BANKR P. 7001.

of the property exceeds $5,000, or $10,000 for joint debtors.

## II. DISCUSSION

### A. History of § 522(f)

When a debtor files a bankruptcy petition, all of the debtor's legal and equitable interests in property, with some exceptions, become property of the estate. 11 U.S.C. § 541(a) (1994). Thereafter, an individual debtor may exempt from property of the estate certain types and amounts of property provided for under either a list of federal exemptions or a list of state exemptions, unless the state law of the debtor restricts the debtor to the state list. 11 U.S.C. § 522(b) (1994). A valid lien or security interest on exempt property securing a prepetition debt is enforceable during or after the case unless the lien is void or is avoided pursuant to one of a number of avoidance provisions in the Bankruptcy Code. 11 U.S.C. § 522(c) (1994). One such provision is § 522(f), which, prior to 1994, provided in pertinent part that "[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under" the applicable state or federal list of exemptions. 11 U.S.C. § 522(f) (1988), *amended by* 11 U.S.C. § 522(f) (1994). Section 522(f) limited the types of avoidable liens to certain judicial liens and nonpossessory, nonpurchase-money security interests in household goods, implements, professional goods, tools of trade, and professionally prescribed health aids. *Id.*

Notwithstanding this Bankruptcy Code provision allowing debtors to avoid qualifying liens on certain personal property, the Court of Appeals for the Fifth Circuit concluded that Texas law, which excluded from the definition of exempt property that property encumbered by a valid security interest or lien, was not preempted by § 522(f). *Bessent v. United States (In re Bessent)*, 831 F.2d 82, 82 (5th Cir.1987) (holding that "Texas debtors may not use 11 U.S.C. § 522(f) to avoid a non-possessory, non-purchase-money, non-judicial lien" on farm implements), *overruled by Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *Allen v.*

*Hale County State Bank (In re Allen)*, 725 F.2d 290, 291–93 (5th Cir.1984) (holding that TEX.REV.CIV.STAT.ANN. art. 3836 [current version at TEX.PROP.CODE ANN. §§ 42.001–.002 (Vernon Supp.1998) ] was not preempted by § 522(f)), *overruled by Owen*. Because the Texas exemption statute specifically excluded validly encumbered property from the definition of exempt property, "the property would not be 522(b) exempt property and would not be exempt under the section (f) savings clause." *Id.* at 293. In short, Debtors who selected the Texas exemption scheme could not employ § 522(f) if the property were encumbered.

The Supreme Court rejected the Fifth Circuit's rationale in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The creditor in *Owen* had a judgment lien on the debtor's homestead that would have qualified for Florida's homestead exemption but for the lien. *Id.* at 306–08, 111 S.Ct. at 1834–35. The Court, noting that the phrase "would have been entitled" in § 522(f) "denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality," concluded that to determine the application of § 522(f), "ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself." *Id.* at 310–11, 111 S.Ct. at 1836–37.

After *Owen*, Texas courts were bound to the proposition that "although a state may elect to control what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the Code." *In re Kelly*, 133 B.R. 811, 813 (Bankr.N.D.Tex.1991) (permitting the debtors to avoid a nonpossessory, nonpurchase-money lien on household goods pursuant to § 522(f)). Therefore, "if unencumbered property of a type may be exempted under the state exemption statute, then any nonpossessory, non-purchase money lien on that property can be avoided under § 522(f)." *Id.*

Unfortunately, neither the Bankruptcy Code nor *Owen* specified what type of "interest" in property a debtor must have to em-

ploy § 522(f), and neither Congress nor the Supreme Court defined "impairment," leaving the lower courts to grapple with these issues. *See, e.g., Simonson v. First Bank of Greater Pittston (In re Simonson),* 758 F.2d 103, 105–06 (3d Cir.1985) (requiring a debtor to have equity—which the court defined as the amount, if any, left after subtracting from the sale proceeds the sum of all nonavoidable liens—in exempt property in order to avoid the fixing of a lien "on an interest of the debtor in property" pursuant to § 522(f)); *DeLiguori v. Granite Bank (In re DeLiguori),* 146 B.R. 52, 60 (Bankr.D.N.H.1992) (holding, in a post-*Owen* case, that "a debtor must have economic equity in his home as of the petition date in order to avoid a judicial lien pursuant to 11 U.S.C. § 522(f)(1)."); *contra Brown v. Dellinger (In re Brown),* 734 F.2d 119, 125 (2d Cir.1984) ("Nearly all of the courts that have construed this section have concluded that ... the debtor is permitted, even if he lacks an equity interest in the property, to avoid the fixing of a judicial lien on the property if that avoidance would allow him to enjoy an exemption provided by § 522(b)."); *Chesanow v. W.H. Squire Co. (In re Chesanow),* 25 B.R. 228, 230 (Bankr.D.Conn.1982) (concluding that a debtor need not have an equity interest in property to employ § 522(f) and that other legal and equitable interests—such as the right of possession and the right to redeem—are sufficient); *cf. Tower Loan of Miss. v. Maddox (In re Maddox),* 15 F.3d 1347, 1351–52 (5th Cir.1994) (rejecting a creditor's argument that a lien did not fix "on an interest of the debtor" because the applicable lien attached before the property became eligible for exemption under Mississippi law: The creditor was interpreting § 522(f) "to mean 'an *exemptible* interest of the debtor,' but the statute merely states 'an interest of the debtor *in property.*' ... [A]t a minimum, the Debtor's ownership interest in the property at issue here suffices.") (alteration in original) (footnote and citation omitted). *See also West v. West (In re West),* 68 B.R. 647, 648–49 (Bankr.C.D.Cal.1986) (concluding that "avoidance of a judicial lien is limited by the amount of the exemption because the amount of the exemption establishes the outside boundary of impairment."); *contra In re*

*Brantz,* 106 B.R. 62, 68 (Bankr.E.D.Pa.1989) (avoiding a judicial lien in an amount greater than the amount of the exemption pursuant to the following formula: " '1. Determine the value of the property on which a judicial lien is sought to be avoided. 2. Deduct the amount of all liens not to be avoided from (1). 3. Deduct the Debtors' allowable exemptions from (2). 4. Avoidance of all judicial liens results unless (3) is a positive figure. 5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of priority, *to that extent only.*' ") (alteration in original) (quoting *In re Magosin,* 75 B.R. 545, 547 (Bankr.E.D.Pa.1987)). Congress would have to set things straight.

## B. Current § 522(f)

Section 522(f) was amended by the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394, 108 Stat. 4106 (1994). The statute, which contains new subsections (f)(2) and (f)(3), now reads in pertinent part as follows:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . .

(B) a nonpossessory, nonpurchase-money security interest in any ... implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor....

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making

the calculation under subparagraph (A) with respect to other liens.

. . . .

(3) In a case in which State law that is applicable to the debtor—

(A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;

the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.

11 U.S.C. § 522(f) (1994).

## C. Application of § 522(f)

The FSA argued in its posthearing brief that § 522(f)(3), and not § 522(f)(1), is the "controlling" subsection of § 522(f) that is dispositive of the dispute. A proper application of the statute to the facts of this case, however, must start with subsections (f)(1) and (f)(2), which provide a "tentative" amount of lien avoidance, and then move to subsection (f)(3), which limits the amount of that avoidance.

### 1. § 522(f)(1)

As previously mentioned, the Debtors elected, pursuant to § 522(b)(2)(A), to exempt from property of their bankruptcy estate those exemptions available under Texas law. The Debtors claimed as exempt property certain tools and equipment used in the Debtors' trade or profession and valued in their schedules at $55,287. *See* TEX.PROP. CODE ANN. § 42.002(a)(4) (Vernon Supp.1998) (providing that tools, equipment, and apparatus used in a trade or profession are exempt from garnishment, attachment, execution, or other seizure).[2] The FSA's nonpossessory, nonpurchase-money security interest in the Debtors' tools of the trade is subject to lien avoidance under § 522(f). *See* 11 U.S.C. § 522(f)(1)(B)(ii) (providing that nonpossessory, nonpurchase-money security interests in implements and tools of the trade of the debtor or the trade of a dependent of the debtor qualify for avoidance); 11 U.S.C. § 101(37) (1994) (" '[L]ien' means charge against or interest in property to secure payment of a debt or performance of an obligation"). Therefore, the Debtors may avoid the fixing of the qualifying lien to the extent it impairs the claimed exemption to which they would have been entitled under Texas law. 11 U.S.C. § 522(f)(1). The extent of the impairment, and thus the amount of the avoidance, is measured, first, by reference to § 522(f)(2).

### 2. § 522(f)(2)

Pursuant to § 522(f)(2), the qualifying lien of the FSA shall be considered to impair the Debtors' exemption to the extent that the sum of—

(i) the lien [$167,289.84];

(ii) all other liens on the property [none]; and

---

**2.** Although the Debtors described the property in their motion to avoid security interest as "farm implements, professional equipment, and tools of the trade of the Debtors or a dependent of the Debtors," the Debtors' schedules specify the law providing their exemption as being § 42.002(a)(4) of the Texas Property Code, which includes tools, equipment, books, and apparatus used in a trade or profession. TEX.PROP. CODE ANN. § 42.002(a)(4) (Vernon Supp.1998).

The schedules do not specify § 42.002(a)(3), which includes farming or ranching vehicles and implements. TEX.PROP.CODE ANN. § 42.002(a)(3) (Vernon Supp.1998). The FSA has not urged that the Debtors' claimed exempt property, which includes farming equipment, does not fall within § 42.002(a)(4) (tools of the trade), and the Court will assume, without deciding, that it does so qualify.

(iii) the amount of the exemption that the Debtors could claim if there were no liens on the property [$55,287];

exceeds the value that the Debtors' interest in the property would have in the absence of any liens [$55,287]. Therefore, under § 522(f)(2), the qualifying lien impairs the exemption to the extent of $167,289.84 [ ($167,289.84 + $0 + $55,287) − ($55,287) ], and the lien may be avoided to that extent— i.e., in full—under § 522(f)(1).[3]

■ Implicit in this interpretation of the statute is the conclusion that the words "to the extent" in § 522(f)(1) ("... the debtor may avoid the fixing of a lien ... *to the extent* that such lien impairs an exemption ...") and (f)(2) ("... a lien shall be considered to impair an exemption *to the extent* that the sum of ... exceeds ...") are words

of limitation: Depending on the facts of the case, a debtor may be permitted to avoid a lien in full, or he may be permitted to avoid the lien only in part. In other words, the statute does not state that a "debtor may avoid the fixing of a lien *if* it impairs an exemption" or that "a lien shall be considered to impair an exemption *if* the sum of [the liens and exemption] ... exceeds the value ...". Cf. *John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*, 510 U.S. 86, 104–05, 114 S.Ct. 517, 528–29, 126 L.Ed.2d 524 (1993) ("But Congress did not say that a contract is exempt 'if' it provides for guaranteed benefits; it said a contract is exempt only 'to the extent' it so provides. Using these words of limitation, Congress apparently recognized that contracts may provide to *some* extent for something other than guar-

---

**3.** The courts interpreting the new § 522(f)(2), when "plugging" the numbers into the statutory formula, have (seemingly) uniformly used the amount of the outstanding debt which a "lien" secures rather than first stripping the lien down to the value of the property. *See* cases *infra* cited in text. One court has noted that a lien, which is defined by the amount of debt it secures and by the value of the property it encumbers, cannot exceed the value of the property it encumbers. *Pepper v. Public Serv. Employees Credit Union (In re Pepper)*, 210 B.R. 480, 485 (Bankr.D.Colo.1997). The court nevertheless concluded that "lien" in § 522(f) means the amount of the judgment or other debt that is secured by the lien, because to limit a "lien" to the value of the property for § 522(f)(2) purposes would render the statute meaningless: "Applied literally, then, section 522(f)(2)(A) accomplishes nothing because the 'sum' of the liens and the homestead could never exceed the value of the property and the 'lien' could, therefore, never 'impair' the exemption." *Id.* Although the court's point regarding the traditional meaning of "lien" is well taken, its conclusion does not necessarily follow. Suppose a debtor claims a $50,000 exemption in property with a fair market value of $100,000 and encumbered by a purchase-money security interest (PMSI) of $20,000 and an avoidable judicial lien of $150,000. Under an expansive definition of "lien," the lien impairs the exemption to the extent the sum of the lien [$150,000], all other liens on the property [$20,000], and the amount of the exemption [$50,000], exceeds the value that the debtor's interest in the property would have in the absence of any liens [$100,000], or $120,000 [ ($150,000 + $20,000 + $50,000) − $100,000]. The $150,000 lien may be avoided to the extent of $120,000, leaving a net lien of $30,000.

Now suppose the lien is limited to $100,000, the value of the property. The lien impairs the exemption to the extent the sum of the lien [$100,000], all other liens on the property [$20,000], and the amount of the exemption [$50,000], exceeds the value that the debtor's interest in the property would have in the absence of any liens [$100,000], or $70,000 [ ($100,000 + $20,000 + $50,000) − $100,000]. The $100,000 lien may be avoided to the extent of $70,000, leaving a net lien of $30,000.

Finally, suppose the lien is limited to $80,000, representing the equity in the property over and above the PMSI. The lien impairs the exemption to the extent the sum of the lien [$80,000], all other liens on the property [$20,000], and the amount of the exemption [$50,000], exceeds the value that the debtor's interest in the property would have in the absence of any liens [$100,000], or $50,000 [ ($80,000 + $20,000 + $50,000) − $100,000]. The $80,000 lien may be avoided to the extent of $50,000, leaving a net lien of $30,000. No matter the value assigned to the lien before avoidance, the net lien afterwards is the same. *See* David G. Carlson, *Security Interests On Exempt Property After the 1994 Amendments to the Bankruptcy Code*, 4 Am. Bankr.Inst.L.Rev. 57, 67 (1996) (discussing similar example).

In this case, if the FSA's lien is restricted to the value of the property, or $55,287, the lien impairs the exemption to the extent the sum of the lien [$55,287], all other liens on the property [$0], and the amount of the exemption [$55,287], exceeds the value that the debtor's interest in the property would have in the absence of any liens [$55,287], or $55,287 [ ($55,287 + $0 + $55,287) − $55,287]. The $55,287 lien may be avoided in full, the same result as if the lien had been assigned a value of $167,289.84. As will be seen, the same principle holds true even after the operation of subsection (f)(3). *See infra* note 9 and accompanying text.

**1014**

anteed benefits, and expressly declared the exemption unavailable to that extent."); *R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89–22–1,* 33 F.3d 145, 158 (2d Cir.1994) (noting that "the phrase '[t]o the extent' permitted by law' [in a union's contract with an employer] has the effect of qualifying and conditioning this clause and limiting its application to what is lawful under the [National Labor Relations] Act."); *Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank of Oregon (In re Sufolla, Inc.),* 2 F.3d 977, 982 (9th Cir.1993) (noting that "[t]he 'to the extent that' language [in 11 U.S.C. § 550(a) ] simply recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of a transfer is recoverable."); *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992) (concluding that the inclusion of the phrase "to the extent" in ERISA's definition of fiduciary "means that a party is a fiduciary only as to the activities which bring the person within the definition."), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993).

Some courts have concluded, in a different context, that the words "to the extent" in a bankruptcy statute are not necessarily words of limitation. *See, e.g., Cohen v. De La Cruz (In re Cohen),* 106 F.3d 52, 56 (3d Cir.1997) (rejecting a prior Ninth Circuit case and concluding "that the language 'to the extent obtained by' was not intended by Congress to limit the amount of debt considered nondischargeable under § 523(a)(2)(A). We therefore hold that debts [including punitive damages] caused by fraud under § 523(a)(2)(A) are nondischargeable *in their entirety."*) (emphasis added), *cert. granted,* — U.S. ——, 118 S.Ct. 30, 138 L.Ed.2d 1060 (1997); *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 679 (11th Cir.1993) ("The language 'to the extent obtained by' [in § 523(a)(2)(A) ] is not conclusive proof that Congress sought to prune the breadth of the definition of 'debt.' "); *contra Palmer v. Levy (In re Levy),* 951 F.2d 196, 198 (9th Cir.1991) (holding that the language "to the extent obtained by" in § 523(a)(2)(A) "does not bar discharge of punitive damages"), *cert. denied,*

504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

Since 1994, when § 522(f) was amended, however, the courts have overwhelmingly—perhaps unanimously—concluded that § 522(f)(2) is simply a formula into which numbers are entered and out of which a defined "impairment" comes. If the amount of the defined impairment equals or exceeds the amount of the qualifying lien, the lien is avoided "in full"; if the amount of the impairment is less than the amount of the qualifying lien, the lien is avoided only in part, or "to that extent." *See, e.g., In re Cavenaugh,* Civ .A. No. 95–4408, 1995 WL 602487, at *1 (E.D.Pa. Oct. 11, 1995) (remanding to the bankruptcy court after applying the formula and determining that the qualifying liens should be avoided in full when the amount of the impairment exceeded the amount of the liens); *Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad),* 208 B.R. 495, 497–98 (10th Cir. BAP 1997) (affirming the bankruptcy court's application of the formula and its determination that the qualifying lien should be avoided in full when the amount of the impairment exceeded the amount of the lien); *In re Youngblood,* 212 B.R. 593, 598 (Bankr. N.D.Ill.1997) (applying the formula and avoiding a qualifying lien in full when the amount of the impairment exceeded the amount of the lien); *In re VanZant,* 210 B.R. 1011, 1014–15 (Bankr.S.D.Ill.1997) (same, impairment exceeded lien); *In re Diegel,* 206 B.R. 194, 196 (Bankr.D.N.D.1997) (same, impairment equaled lien); *In re Jakubowski,* 198 B.R. 262, 264 (Bankr.N.D.Ohio 1996) (same, impairment exceeded lien); *In re Allard,* 196 B.R. 402, 411 (Bankr.N.D.Ill.1996) (same, impairment exceeded lien), *aff'd, Great Southern Co. v. Allard,* 202 B.R. 938 (N.D.Ill.1996); *Butler v. Southern O Corp. (In re Butler),* 196 B.R. 329, 330–32 (Bankr. W.D.Va.1996) (same, impairment exceeded lien); *Jones v. Mellon Bank, N.A. (In re Jones),* 183 B.R. 93, 95 (Bankr.W.D.Pa.1995) (same, impairment equaled lien); *but cf. Lashley v. Fuhrer (In re Lashley),* 206 B.R. 950, 954 (Bankr.E.D.Mo.1997) (noting the formula and avoiding the lien in full without

determining the value of the property).[4] *See also Bank of America Nat'l Trust and Sav. Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 594–596 (9th Cir. BAP 1997) (reversing the bankruptcy court's determination that a lien should be avoided in full; applying the formula twice and determining that the junior qualifying lien should be avoided in full, but the senior qualifying lien only in part); *FDIC v. Finn (In re Finn)*, 211 B.R. 780, 782–84 (1st Cir. BAP 1997) (same); *In re Johnson*, 184 B.R. 141, 146–47 (Bankr. D.Wyo.1995) (applying the formula twice and avoiding the junior qualifying lien in full, but the senior qualifying lien only in part). *And see also In re Andres*, 212 B.R. 306, 308, 310–11 (Bankr.N.D.Ill.1997) (avoiding the qualifying lien only in the amount of the impairment when the amount of the impairment was less than the amount of the lien); *In re Gostian*, 215 B.R. 237, 238–39 (Bankr.M.D.Ala.1997)

(same); *Canelos v. Mignini (In re Canelos)*, 216 B.R. 159, 164–65 (Bankr.D.Md.1997) (same); *In re Moe*, 199 B.R. 737, 739–40 (Bankr.D.Mont.1995) (same); *In re Todd*, 194 B.R. 893, 897–98 (Bankr.D.Mont.1996) (same); *cf. Choice v. Copelco Capital, Inc. (In re Choice)*, Nos. 97–15868DAS, 97–0852, 1997 WL 599577, at *3 (Bankr.E.D.Pa. Sept. 23, 1997) (indicating that the court would, at the time of the hearing on the motion to avoid lien, apply the formula and avoid the qualifying lien only in part); *In re Ryan*, 210 B.R. 7, 12–13 (Bankr.D.Mass.1997) (indicating that the court would avoid the qualifying lien only in part after the evidentiary hearing on the value of the subject property); *but cf. In re Thomsen*, 181 B.R. 1013, 1016–17 & n. 2 (Bankr.M.D.Ga.1995) (avoiding the qualifying lien in full when the amount of the impairment exceeded the amount of the lien, yet questioning whether a lien may properly be partially avoided when the lien only partially impairs an exemption).[5]

**4.** The debtor in *Lashley* claimed an $8,000 exemption in property that was subject to an $11,900 first deed of trust lien and an avoidable $53,000 judgment lien. The property value, according to the parties' conflicting appraisals, was between $15,700 and $33,000. *In re Lashley*, 206 B.R. at 952. A judicial determination of the value of the property appeared necessary: Using the low-end property value, the judicial lien impaired the exemption to the extent the sum of the liens and the claimed exemption [$72,900] exceeded the debtor's interest absent liens [$15,700], or $57,200 [$72,900 − $15,700] (full avoidance). Using the high-end property value, the judicial lien impaired the exemption to the extent the sum of the liens and the claimed exemption [$72,900] exceeded the debtor's interest absent liens [$33,000], or $39,900 [$72,900 − $33,000] (partial avoidance).

The court, however, concluded that "the value of the Debtor's interest in the property is equal to the amount of the exemption that the Debtor could claim if there were no liens on the property." *Id.* at 954. Therefore, "it is not necessary to determine the value of the real property … because the sum of liens and exemption amount referred to in Section 522(f)(2)(A) will always be greater than the value of the Debtor's interest in the property by at least the amount of the judgment lien." *Id.* The court seemingly concluded that the judicial lien impaired the exemption to the extent the sum of the liens and the claimed exemption [$72,900] exceeded the debtor's interest absent liens [$8,000], or $64,900 [$72,900 − $8,000] (always full avoidance). The court appears to be alone in its conclusion that "the debtor's interest in the property" in the absence

of liens, within the meaning of § 522(f)(2)(A), is the debtor's *exemptible* interest.

Although there are cases—such as the instant one—where the debtor's exemptible interest under § 522(f)(2)(A)(iii) equals the debtor's lien-free interest (which is to be subtracted from the sum of the exemptible interest plus all liens), that is because the value of the property is less than the maximum allowable exemptible interest under the statute. This need not always be the case, as the above examples demonstrate. But according to the *Lashley* court, the debtor's lien-free interest is, by definition, his exemptible interest. In every case, then, whatever is added in § 522(f)(2)(A)(iii) is automatically deducted pursuant to the very next line in the statute. This useless act cannot be what Congress intended.

**5.** Notwithstanding the statutory formula, the court concluded that lien avoidance is an all-or-nothing proposition: "Property is either subject to a lien, or not…. The provisions of section 522(f) only provide for avoiding the lien, not reducing the lien." *In re Thomsen*, 181 B.R. at 1017 n. 2. Even if a lien could be partially avoided, the court could find no "distinction in the result where impairment occurs to a greater extent or to a lesser extent unless the claim secured by the lien is reduced." *Id.* Section 522(f) does not provide for reducing the claim, as the court correctly noted. The distinction in the result, however, is the greater or lesser amount of the *unsecured* portion of the claim assertable against the debtor's bankruptcy estate, and the greater or lesser amount of the creditor's post-bankruptcy *lien* on exempt property.

These cases implicitly recognize that the words "to the extent" in § 522(f) are words of limitation meaning "by the amount that" and not "if." One court expressly recognized the limiting nature of the phrase. *Corson v. Fidelity and Guar. Ins. Co. (In re Corson),* 206 B.R. 17, 22 (Bankr.D.Conn.1997) ("[T]he Court rejects the Debtor's argument that a lien can be avoided in its entirety even if only part of the lien impairs an exemption. The Debtor's view ignores the phrase, 'to the extent that', in the introductory clause of Section 522(f)(2)(A), and in essence replaces that phrase with the word 'if'. The invalidity and impropriety of such a construction is self-evident."). This Court agrees that the words "to the extent" in § 522(f)(1) and (f)(2) are words of limitation meaning "by the amount that" and not "if."

Therefore, as previously mentioned, the qualifying lien of the FSA impairs the Debtors' exemption under § 522(f)(2) *to the extent* of $167,289.84, and the lien may be avoided *to that extent* under § 522(f)(1), *"but subject to paragraph 3."* 11 U.S.C. § 522(f)(1) (emphasis added).

### 3. § 522(f)(3)

■ *(f)(3)(A):* Two conditions must be met before the operative phrase of subsection (f)(3) comes into play. First, under § 522(f)(3)(A), Texas law must either (1) permit the Debtors to voluntarily waive a right to claim exemptions under § 522(d), or (2) prohibit the Debtors from claiming exemptions under § 522(d). Texas has not "opted out" of the § 522(d) federal list of exemptions, so the second alternative of subpart (A) is inapposite. *See* 11 U.S.C. § 522(b)(1) (providing that a debtor may elect the exempt property in § 522(d), unless the state law applicable to the debtor specifically does not so authorize). For § 522(f)(3) to apply in this case, therefore, pursuant to the first alternative of subpart (A), Texas law must permit the Debtors to voluntarily waive a right to claim exemptions under § 522(d).

The courts that have struggled with § 522(f)(3) have identified two possible meanings of the first alternative of subpart (A). The provision could mean that state law must affirmatively permit a person to sign a waiv-

er of his right to claim exemptions ("contractual waiver"). As one bankruptcy court noted, "[i]t is unlikely that any state law permits persons to waive the right to claim exemptions under 11 U.S.C. § 522(d), since waivers of exemptions are specifically unenforceable under 11 U.S.C. § 522(e)." *In re Zimmel,* 185 B.R. 786, 791 (Bankr.D.Minn.1995). Indeed, Texas has no such law on the books. According to the *Zimmel* court, this interpretation is the "plain meaning" of the provision. *Id.* at 791 & n. 2 (citing *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("Where statutory language is clear with a plain meaning, a court's function is then only to enforce or apply such language.")).

The provision could also mean that § 522(f)(3) applies to those cases in which the debtor, in a state that has not "opted out" of the federal exemptions, has voluntarily chosen the state exemptions. According to this interpretation, the absence of a state law expressly prohibiting the election of federal exemptions constitutes a law of the state permitting a person to voluntarily waive his right to them by selecting the state exemptions. The court in *Zimmel* questioned why "such a simple application might be expressed in such a convoluted way," yet noted the credibility of the interpretation "if only from the apparent lack of any other more reasonable explanation that would give meaning to the first alternative phrase of the subparagraph." *Id.* at 791 (noting the different interpretations of the first alternative of subpart (A), yet never deciding the issue: "But, even assuming that the interpretation [voluntary selection of state exemptions] of Subparagraph (A) is the correct one and the subparagraph is satisfied, neither of the alternative requisites of Subparagraph (B) is satisfied by Minnesota law."). The only two bankruptcy courts to have decided the issue have followed this interpretation, one without hesitation, and one only reluctantly. *In re Parrish,* 186 B.R. 246, 247 (Bankr.W.D.Wis. 1995) (summarily concluding that § 522(f)(3)(A) was satisfied in a case in which the debtor could have elected the federal exemptions but instead chose the state exemptions: "[I]n order for [subpart (A) ] to

apply, ... either the debtor has voluntarily chosen to use the state exemptions or the state has opted out of the federal exemptions.") (citing legislative history); *In re Ehlen,* 202 B.R. 742, 746–47 (Bankr.W.D.Wis. 1996) (noting the *Zimmel* court's "well[-]taken" concerns regarding this interpretation, yet reluctantly concluding, after referring to legislative history, that subpart (A) was satisfied in a case where the debtor voluntarily selected state exemptions), *aff'd,* 207 B.R. 179, 182 (W.D.Wis.1997) (noting, although neither party challenged this portion of the bankruptcy court's holding, that "this is the only logical way to interpret the phrase, 'voluntarily waive a right to claim exemptions under subsection (d).' To read it literally would render the phrase meaningless, since there is little if any likelihood that any state could permit a debtor to waive his right to claim exemptions when § 522(e) makes waivers of exemptions unenforceable.").

Before considering the legislative history upon which the *Parrish* and *Ehlen* bankruptcy courts relied, the Court must first find that the language in subpart (A) is ambiguous. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (indicating that a court may look to legislative history for guidance when the words of a statute are ambiguous). As already mentioned, the *Zimmel* court's "plain meaning" analysis concluded that the phrase "voluntarily waive a right to claim exemptions under subsection (d)" referred to the type of contractual waiver that is seemingly contemplated by § 522(e) and (f)(1) and that is executed (in loan documents, for example) in favor of a creditor. 11 U.S.C. § 522(e) (providing that a "waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against such property that the debtor may exempt under subsection (b) of this section."); 522(f)(1) (providing that a debtor may avoid the fixing of a qualifying lien "[n]otwithstanding any waiver of exemptions....").

The "executed" contractual waiver seemingly contemplated by § 522(e) and (f)(1), however, appears to be a "general" waiver of exemptions—that is, a contractual waiver wherein the debtor waives *any* claim of exemption in the property. Indeed, § 522(e) directs that contractual waivers are unenforceable with respect to an unsecured creditor's claim against property *"that the debtor may exempt under subsection (b) of this subsection,"* and § 522(b) encompasses both state *and* federal exemptions. Section 522(f)(3)(A), on the other hand, refers only to state law that permits a person to waive *federal* exemptions. 11 U.S.C. § 522(f)(3)(A) (referring to state law that "permits a person to voluntarily waive a right to claim exemptions *under subsection (d)* ") (emphasis added). If the phrase at issue in subpart (A) "plainly" means a contractual waiver, why would such a contractual waiver be restricted to federal exemptions? And if the statute was intended to refer to a "general" contractual waiver, why the specific reference to federal exemptions "under subsection (d)"?

It seems equally plausible that the phrase "permits a person to voluntarily waive a right to claim exemptions under subsection (d)" refers to the debtor in a non-"opt out" state who elects state exemptions, thereby "waiving" his right to claim federal exemptions. This concept of a "procedural" waiver is not without precedent. For example, the bankruptcy court in *In re McLamb,* 93 B.R. 72, 76 (Bankr.E.D.N.C.1988), *abrogation recognized by In re Pinner,* 146 B.R. 659, 659–61 (Bankr.E.D.N.C.1992), held that a prepetition procedural waiver of exemption rights may be enforced in bankruptcy. The debtors in that case procedurally waived their exemption rights under state law by failing to timely file a response to notices of their right to have exemptions designated. *Id.* at 73–74. The court concluded that a Fourth Circuit case had not overruled a prior district court opinion which held that the limitations on waivers mentioned in § 522(e) and (f)(1) applied only to contractual waivers. *Id.* at 75–76 (citing *United States v. Scott,* 45 B.R. 318 (M.D.N.C.1984) (holding that § 522(e) applied only to contractual waivers and not procedural waivers); *Dominion Bank of Cumberlands, NA v. Nuckolls,* 780 F.2d 408, 413 (4th Cir.1985) (casting doubt, in dicta, on *Scott* )). Therefore, whether or not the failure to comply with state law re-

quirements to claiming an exemption is labeled a "waiver" under state law, such a failure or "procedural waiver" precludes a debtor from claiming that exemption right in bankruptcy. *Id.* at 75–76; *accord* 4 COLLIER ON BANKRUPTCY ¶ 522.07, at 522–35 (15th rev. ed.1997) (concluding that "[t]he Code clearly will not permit enforcement of a waiver executed in favor of a creditor," but noting that the statutory language does not make other types of waivers, such as a procedural waiver under state law or the failure to claim an exemption in the bankruptcy schedules, unenforceable); *but see North Carolina Baptist Hosps. v. Howell (In re Howell)*, 51 B.R. 1015, 1017–18 (M.D.N.C.1985) (affirming the bankruptcy court's order relieving the debtor from his prepetition procedural waiver of exemptions because § 522(*l*), which places no specific time limit for claiming exemptions, preempted the state law that permitted a procedural waiver for failure to designate exemptions within a specified time).

The recognition by at least some courts of procedural waivers not encompassed by § 522(e) and (f)(1) lends support to the theory that the waiver provision of § 522(f)(3)(A) may involve something other than contractual waivers. Although " ' " 'identical words used in different parts of the same act are intended to have the same meaning,' " ' " *Sullivan v. Stroop*, 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (quoting *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986) (in turn quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87, 55 S.Ct. 50, 51, 79 L.Ed. 211 (1934) (in turn quoting *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 608–09, 76 L.Ed. 1204 (1932)))), § 522(e) and (f)(1) speak of a "waiver" of an exemption (commonly a shorthand for contractual waiver), whereas subsection (f)(3) refers to state law that permits a person to "waive a right" to claim exemptions. True, a person can waive a right to claim exemptions (or at least attempt to) by signing a contractual waiver, but there are other ways to waive rights. Moreover, the phrase "permits a person to voluntarily waive a right to claim exemptions under subsection (d)" is juxtaposed to the second alternative condition of subpart (A), which recognizes a state's right to prohibit a debtor from claiming federal exemptions "under subsection (d)," suggesting that both conditions may relate to a state's right to "opt out" of the federal exemptions "under subsection (d)." The above factors lead the Court to conclude that the meaning of § 522(f)(3)(A) is ambiguous—not plain—and that it is appropriate in this instance to look to legislative history for guidance.

The legislative history to subpart (A), at first glance, appears instructive: It states that § 522(f)(3) applies "in cases in which the debtor has voluntarily chosen the State exemptions or has been required to utilize State exemptions because a State has opted out of the federal exemptions." H.R.REP. No. 103–835, at 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. It is curious, though not surprising, that Congress chose to state this simple proposition in such a convoluted way, for as the Seventh Circuit has noted, "the entire scheme of optional state exemptions ... is such a mess as to call into question the skill of the Code's draftsmen with regard to questions of exemption generally." *In re Thompson*, 867 F.2d 416, 421 (7th Cir.1989).

The recognition that subsection (f)(3) applies when the debtor voluntarily chooses state exemptions seems to vindicate the argument that an election of state exemptions equals a procedural "waiver" of federal exemptions within the meaning of § 522(f)(3)(A). But the legislative history continues: "This section [(f)(3)] has no applicability if the debtor chooses the Federal bankruptcy exemptions, which cannot be waived." H.R.REP. No. 103–835, at 57 (1994); *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. This statement suggests that subsection (f)(3) involves contractual waivers, because a debtor *can* procedurally "waive" federal exemptions by electing state exemptions (and vice versa). To add even more confusion, by specifically noting that federal exemptions cannot be (contractually) waived, this part of the legislative history implies that state exemptions can be waived, yet as already mentioned, § 522(e) makes contractual waivers of both state *and* federal exemptions unenforceable. In short, § 522(f)(3)(A) is a textual

riddle wrapped in mysterious legislative history inside an enigma of conflicting interpretations.

Faced with the choice between a contractual-waiver interpretation that never applies because no state makes (or attempts to make) contractual waivers enforceable, and a procedural-waiver interpretation which—although awkwardly worded—ensures that § 522(f)(3)(A) is satisfied whenever a debtor utilizes state exemptions (voluntarily in a non-"opt out" state or involuntarily in an "opt out" state), the Court chooses the latter. Although both interpretations are supported by the language of the statute, the latter interpretation leads to less absurd results. *See United States v. Female Juvenile*, 103 F.3d 14, 16–17 (5th Cir.1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result."), *cert. denied*, ―― U.S. ――, 118 S.Ct. 83, 139 L.Ed.2d 41 (1997).

One more absurdity in § 522(f)(3)(A) should be noted. Technically, subpart (A) requires that state law either permit a debtor to choose state exemptions (by not opting out of the list of federal exemptions) or prohibit a debtor from claiming federal exemptions (by opting out of the list of federal exemptions). What state has not either opted out or not opted out? Ordinarily "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). The intent of Congress in enacting § 522(f)(3)(A), as already discussed, is not clear from the legislative history. But Congress must have intended to do *something*. The first alternative condition in subpart (A) has no meaning unless it means that state law must permit a debtor to waive his right to claim federal exemptions, and that the debtor *has* waived that right by electing state exemptions.

In this case, Texas law permits the Debtors to procedurally "waive" their right to claim federal exemptions, and the Debtors have waived that right by voluntarily selecting those exemptions available under the Texas Property Code. The first alternative condition in § 522(f)(3)(A) is satisfied.

*(f)(3)(B)*: The second condition that must be satisfied before the operative phrase of § 522(f)(3) comes into play is this: Texas law must either (1) permit the Debtors to claim exemptions without limitation in amount, except to the extent that the Debtors have permitted the fixing of a consensual lien on any property; or (2) prohibit avoidance of a consensual lien on property otherwise eligible to be claimed as exempt. 11 U.S.C. § 522(f)(3)(B). Fortunately, this one is easy. The Texas Property Code provides in pertinent part as follows:

> Personal property, unless precluded from being encumbered by other law, may be encumbered by a security interest under Section 9.203, Business & Commerce Code, or Subchapter F, Chapter 501, Transportation Code, or by a lien fixed by other law, *and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.*

TEX.PROP.CODE.ANN. § 42.002(b) (Vernon Supp.1998) (emphasis added). The second alternative condition in § 522(f)(3)(B) is satisfied, and the limitation on avoidance in § 522(f)(3) thus applies in this case.

■ *Operative Phrase*: The operative phrase of § 522(f)(3) provides that "the debtor may not avoid the fixing of a lien on an interest of the debtor ... if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor ... to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000." 11 U.S.C. § 522(f)(3).

Few courts and commentators have passed on the meaning of this provision, and even fewer in any detail. The court in *In re Weinstein*, 192 B.R. 133 (Bankr.E.D.Va. 1995), although ultimately determining that § 522(f)(3) did not apply to the facts of the case, described the statute as permitting "a debtor to avoid a nonpurchase-money securi-

ty interest as long as the value of the property does not exceed $5,000." *Id.* at 136. The § 522(f)(3) limitation, according to this interpretation, is directly measured by the *value of the property* claimed as exempt. If the applicable personal property is worth more than $5,000, the qualifying lien may not be avoided. *Accord* Margaret Howard, *Avoiding Powers and the 1994 Amendments to the Bankruptcy Code,* 69 AM.BANKR.L.J., Summer 1995, at 259, 281 ("[Section 522(f)(3), where applicable,] permits the debtor to avoid a lien on the specified types of property—implements, professional books, tools of the trade, farm animals and crops—only up to $5,000 in value.").[6]

At least two courts have ascribed a different meaning to § 522(f)(3). The debtor in *In re Parrish,* 186 B.R. 246 (Bankr.W.D.Wis. 1995), claimed a state law exemption of $7,500 for two tractors as tools of the trade and moved to avoid a bank's nonpossessory, nonpurchase-money security interest pursuant to § 522(f)(1). *Id.* at 247. The court concluded that § 522(f)(3) "limits the amount that may be avoided in 'tools of the trade' to $5,000. Because the transaction fits within § 522(f)(3), [the debtor] may avoid Bank's lien, to the extent of $5,000." *Id.* at 248. Under this interpretation, the limitation in § 522(f)(3) is a direct limitation *on the amount of the avoidance,* and that limitation is $5,000. *Accord* 2 NORTON BANKR.L. & PRAC. § 46:24 (2d ed. Supp.1997) ("[Section 522(f)(3), where applicable,] permits the debtor to avoid only $5,000 of the lien in such property...."); Ned W. Waxman, *The Bankruptcy Reform Act of 1994,* 11 Bankr. Dev.J. 311, 325 (1994–95) (describing § 522(f)(3) as "setting a ceiling of $5,000 on the avoidance of a nonpossessory nonpur-

chase-money security interest in" applicable personal property). In a similar vein, the district court in *United States v. Ehlen (In re Ehlen),* 207 B.R. 179 (W.D.Wis.1997), affirmed the bankruptcy court's determination that § 522(f)(3) did not apply to the facts of the case. *Id.* at 185. Before doing so, however, the court stated that "[t]he basic idea of these rather clumsy paragraphs is that if the applicable state law fits one or the other of the two alternative conditions in both paragraphs, the debtor's lien avoidance is capped at $5,000 per debtor for tools of the trade." *Id.* at 182. This appears to be the limitation on avoidance described in *Parrish,* only doubled now for joint debtors.

This Court respectfully disagrees with the above authorities. First, the interpretation suggested by the court in *Weinstein* essentially replaces the phrase "to the extent" with the word "if": "[T]he debtor may not avoid the fixing of a [qualifying] lien on an interest of the debtor ... *if* the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000." [7] As already noted, the words "to the extent" are ordinarily words of limitation, and since 1994, the courts have uniformly determined that the words "to the extent" in § 522(f)(1) and (f)(2) do not mean "if." The interpretation urged here contravenes the ordinary rule of statutory construction that " ' " 'identical words used in different parts of the same act are intended to have the same meaning.' " ' " *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (quoting *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986) (in turn quoting *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87, 55 S.Ct. 50, 51, 79 L.Ed. 211 (1934) (in

---

6. This interpretation stands alone only if the statute prohibits avoidance of a lien on an *individual* item of property that exceeds $5,000 in value. If the statute prohibits avoidance of a lien on property that exceeds $5,000 in aggregate value (but allows lien avoidance on the first $5,000), then the result is the same as in the competing interpretation immediately below (debtors given $5,000 worth of avoidance), and the two theories merge. To be fair to Professor Howard and the *Weinstein* court, it is not clear whether they were referring to individual or aggregate value.

7. In its Posthearing Brief, the FSA credited the bankruptcy court in *In re Erwin,* 199 B.R. 628, 629 (Bankr.S.D.Tex.1996), with having adopted this position in dicta. In fact, the court's comments substantially tracked the language of the statute: Under § 522(f)(3), "the debtor may not avoid a security interest to the extent that the value of the property is in excess of $5,000." *Id.* The court did *not* state that the debtor may not avoid the security interest *if* the value of the property is in excess of $5,000; the court instead left unanswered the question here in controversy: the meaning of the phrase "to the extent."

turn quoting *Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 608–09, 76 L.Ed. 1204 (1932)))). This rule "must surely apply, *a fortiori,* to use of identical words *in the same section of the same enactment." Dewsnup v. Timm,* 502 U.S. 410, 422, 112 S.Ct. 773, 781, 116 L.Ed.2d 903 (1992) (Scalia, J., and Souter, J., dissenting).

The Supreme Court in *Dewsnup* held, notwithstanding this general rule, that an "allowed secured claim" under § 506(d) of the Bankruptcy Code was not the same as "[a]n allowed claim ... [that] is a secured claim" under § 506(a). The Court rejected an interpretation of the amended statute that would have effected a major change in pre-Code practice (granting to debtors the power to strip down allowed claims under § 506(d) to the extent they became "unsecured" for purposes of § 506(a)) without mentioning the new remedy either in the Code or in the legislative history. *Id.* at 419–20, 112 S.Ct. at 779. The Court suggested, however, that it might have held otherwise "[w]ere we writing on a clean slate...." *Id.* at 417, 112 S.Ct. at 778.

In this case, Congress was writing on a clean slate in the Bankruptcy Reform Act of 1994 ("Act") when it added the new subsection (f)(3) to § 522, so there is no practice prior to 1994 to justify deviating from the ordinary limiting nature of the phrase. The words "to the extent" in § 522(f)(3) mean the same thing as they do in § 522(f)(1) and (f)(2): "by the amount that" and not "if." *Cf. Corson v. Fidelity and Guar. Ins. Co. (In re Corson),* 206 B.R. 17, 22 (Bankr.D.Conn. 1997) ("[T]he Court rejects the Debtor's argument that a lien can be avoided in its entirety even if only part of the lien impairs an exemption. The Debtor's view ignores the phrase, 'to the extent that', in the introductory clause of Section 522(f)(2)(A), and in essence replaces that phrase with the word 'if'. The invalidity and impropriety of such a construction is self-evident."). Section 522(f)(3), therefore, is not a limitation on the dollar amount of property that may be claimed as exempt before lien avoidance is prohibited, but is instead a limitation on the amount of avoidance provided to the Debtors in § 522(f)(1) and (f)(2), as more fully set forth below.[8]

**8.** Even if the Court were to find the meaning of the phrase ambiguous, the legislative history is little help in this regard. It provides that subsection (f)(3) is "a limited exception to the debtor's ability to avoid nonpossessory nonpurchase-money security interests in implements, professional books, or tools of trade of the debtor or a dependent of the debtor, or farm animals or crops of the debtor or a dependent of the debtor." H.R.Rep. No. 103–835, at 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. This remark recognizes that a limited exception exists, but does nothing to illuminate how the exception operates. The last statement in the House Report concerning § 522(f)(3) is likewise unenlightening: "Like other *exemption* provisions, the new provision applies separately to each debtor in a joint case." H.R.Rep. No. 103–835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366 (emphasis added). By referring to subsection (f)(3) as an *exemption* provision, this statement seems to imply, not that lien avoidance is prohibited on property worth more than $5,000, but instead that joint debtors may exempt only $10,000 ($5,000 for each debtor) for tools of the trade.

Section 522(f)(3), however, is *not* an exemption provision; it is one part of a *lien avoidance* provision and limits the avoidance powers given to debtors under § 522(f)(1) and (f)(2). The text of subsection (f)(3) and its placement within the larger lien avoidance provision simply do not

allow the interpretation that subsection (f)(3) was intended, notwithstanding § 522(b), to limit a state's right to define its own exemption scheme. To put a twist on another bankruptcy court's apt observation, although federal law determines the availability of lien avoidance under § 522(f), state law still controls what property is exempt under state law. *See In re Kelly,* 133 B.R. 811, 813 (Bankr.N.D.Tex.1991) (noting that "although a state may elect to control what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the Code.").

The Court is sympathetic to the argument that creditors' liens on individually expensive farm implements and tools of the trade (for example, those worth more than $5,000 each) are still subject to lien avoidance even after the amendment to § 522(f), but the text of the statute ("to the extent") militates against the "if" construction of subsection (f)(3) that would protect expensive collateral. Additionally, the text of subsection (f)(3), for the reasons described in greater detail below, suggests that the value of the subject property is the aggregate—not individual—value of the property. Finally, it is true that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enter-*

Second, although the courts' conclusion in *Parrish* and *Ehlen* that § 522(f)(3) is a limitation on the amount of avoidance is correct, their further conclusion that the limitation is $5,000 (or $10,000 for joint debtors) is not supported by the language of the statute. Under subsection (f)(3), a "debtor may not avoid the fixing of a [qualifying] lien on an interest of the debtor . . . to the extent the value of such implements, professional books, tools of the trade, animals, and crops *exceeds* $5,000." 11 U.S.C. § 522(f)(3) (emphasis added). The limitation is measured by the *difference* between the value of the exempt property and $5,000. Therefore, the Debtors may not avoid the qualifying lien of the FSA to the extent the value of the Debtors' tools of the trade [$55,287] exceeds $5,000, or $50,287 [$55,287 − $5,000]. In short, the limitation on avoidance (or "nonavoidance") under § 522(f)(3) is $50,287. When subtracted from the $167,289.84 "tentative" amount of avoidance under § 522(f)(1), the net avoidance under § 522(f) becomes $117,002.84 [$167,289.84 − $50,287]. The United States is left with a net lien of $50,287 [$167,289.84 prepetition lien − $117,002.84 net avoidance], and the Debtors are left with $5,000 in net equity [$55,287 property value − $50,287 net lien].[9] To summarize:

| | | |
|---|---|---|
| #1 | Prepetition lien of the FSA: | $167,289.84 |
| #2 | All other liens on property: | $ 00.00 |
| #3 | Amount of claimed exemption: | $ 55,287.00 |
| | | |
| #4 | Sum of # 1 + # 2 + # 3 above: | $222,576.84 |
| #5 | Debtors' interest absent liens: | $ 55,287.00 |
| | | |
| #6 | Amount of impairment under § 522(f)(2) [# 4 − # 5]: | $167,289.84 |
| #7 | Tentative amount of avoidance under § 522(f)(1): | $167,289.84 |
| #8 | Value of Debtors' tools of trade: | $ 55,287.00 |
| #9 | Floor for measuring limitation on avoidance: | $ 5,000.00 |
| | | |
| #10 | Limitation on avoidance per § 522(f)(3) [# 8 − # 9] | $ 50,287.00 |
| #11 | Net avoidance [# 7 − # 10]: | $117,002.84 |
| #12 | Amount of prepetition lien [# 1]: | $167,289.84 |
| #13 | Net avoidance [# 11]: | $117,002.84 |
| | | |
| #14 | Net lien [# 12 − # 13]: | $ 50,287.00 |
| | | |
| #15 | Value of Debtors' tools of trade [# 8]: | $ 55,287.00 |
| #16 | Net lien [# 14]: | $ 50,287.00 |
| | | |
| #17 | Debtors' net equity [# 15 − # 16]: | $ 5,000.00 |

*Accord* Carlson, *supra* note 3, at 80 ("The section 522(f)(3) limit withdraws avoidance otherwise provided for under section 522(f)(1)(B). Hence, we must first determine the extent to which a security interest impairs an exemption, per the formula of section 522(f)(2). The limit then withdraws avoidance of that security interest by a defined amount. The amount withdrawn is the difference between the value of the collateral and $5,000. Hence, it is wrong to think that section 522(f)(3) limits the debtor to exemptions worth $5,000, or that avoidance is directly related to $5,000. Rather, the limit on avoidance is the difference between the value of the collateral and $5,000.") (footnotes omitted).

There will be cases where this interpretation of § 522(f)(3) does not produce the reasonable result reached here that the Debtors retain a $5,000 lien-free interest in their tools of the trade. *See* Carlson, *supra* note 3, at

---

*prises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). The oblique reference in the legislative history to a nonexistent exemption provision, however, is not sufficient reason to abandon the natural meaning of the text and instead conclude that subsection (f)(3) was intended to prohibit lien avoidance if the applicable personal property is worth more than $5,000 (or $10,000 for joint debtors).

9. As suggested earlier, *see supra* note 3, the outcome is the same in this case even if the "lien" of the FSA is limited to $55,287, the value of the property: Under § 522(f)(2), the lien impairs the exemption to the extent the sum of the lien [$55,287], all other liens on the property [$0], and the amount of the exemption [$55,287], exceeds the value that the debtor's interest in the property would have in the absence of any liens [$55,287], or $55,287 [ ($55,287 + $0 + $55,287) − $55,287]. The $55,287 lien may be avoided in full pursuant to § 522(f)(1), but subject to subsection (f)(3). Under § 522(f)(3), the Debtors may not avoid the lien to the extent the value of the Debtors' tools of the trade [$55,287] exceeds $5,000, or $50,287 [$55,287 − $5,000]. The net avoidance is $5,000 [$55,287 tentative avoidance − $50,287 limitation on avoidance], the net lien becomes $50,287 [$55,287 prepetition lien − $5,000 net avoidance], and the Debtors are left with net equity of $5,000 [$55,287 property value − $50,287 net lien].

80–83 (discussing examples where § 522(f)(3)'s limitation on avoidance leaves the debtor with no net equity over and above the sum of all liens). This same criticism, however, also holds true for the competing interpretation followed by the *Parrish* court. In this case, for example, if the Debtors' lien avoidance were limited to $5,000, the FSA's net lien would become $162,289.84 [$167,289.84 prepetition lien − $5,000 avoidance], leaving the property substantially overencumbered and the Debtors without any benefit from their claimed exemption. If debtors in future cases must be denied the benefit of their claimed exemption, this Court elects to do so while "follow[ing] the language of the Code." *Owen v. Owen*, 500 U.S. 305, 314 n. 6, 111 S.Ct. 1833, 1838 n. 6, 114 L.Ed.2d 350 (1991).[10]

■ One final note is in order. The Debtors claimed as exempt property over fifty tools of the trade, only three of which individually exceed $5,000 in value. The Court's application of the formula in the above paragraphs assumed that the limitation in § 522(f)(3) is measured by the difference between the *aggregate* value of the Debtors' tools of the trade and $5,000, and not measured separately for each individual tool of the trade. The text of the statute, which describes the subject property in the plural, supports this interpretation. 11 U.S.C. § 522(f)(3) ("[T]he debtor may not avoid the fixing of a lien ... to the extent the value of such *implements, professional books, tools of the trade, animals, and crops* exceeds $5,000.") (emphasis added). The court in *Parrish*, the only other bankruptcy court to have employed § 522(f)(3), appears to have adopted this interpretation. As previously mentioned, the debtor in that case sought to avoid a creditor's lien on two tractors that the debtor claimed as exempt property. *In re Parrish*, 186 B.R. at 247. Although the court concluded that § 522(f)(3)'s limitation on avoidance was $5,000 (and not the difference between the value of the collateral and $5,000), the court applied the statute to the aggregate $7,500 value of both tractors, not separately to each. *Id.* at 248.

Congress certainly could have been more explicit in directing that the "value" of the property in § 522(f)(3) be the aggregate value. For instance, in a different context, the Bankruptcy Code provides that a debtor who elects federal exemptions may exempt "[t]he debtor's *aggregate* interest, not to exceed $1,500 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C. § 522(d)(6) (1994) (emphasis added). On the other hand, Congress knew how to single out individual items of property for value measurement had it desired to do so. For example, again in the context of an exemption provision, the Code provides that a debtor who elects federal exemptions may exempt "[t]he debtor's interest, *not to exceed $400 in value in any particular item* or $8,000 in aggregate value, in" certain enumerated household goods. 11 U.S.C. § 522(d)(3) (1994) (emphasis added). *See also* 11 U.S.C. § 522(d)(2) (allowing an exemption of "[t]he debtor's interest, not to exceed $2,400 in value, in *one* motor vehicle.") (emphasis added). The language in § 522(f)(3), part of the lien avoidance provision, is not as specific (one way or the other) as the language in § 522(d), the federal exemption provision, but the use of plural nouns in § 522(f)(3) to describe the subject property suggests that the property should be aggregated. This Court so holds.

### III. CONCLUSION

The FSA holds a nonpossessory, nonpurchase-money security interest in the Debtors' tools of the trade that is subject to avoidance pursuant to § 522(f) of the Bankruptcy Code. Under § 522(f)(2), the amount of the defined impairment equals the amount of the lien, and the lien may be avoided in full under § 522(f)(1), subject to subsection (f)(3). Section 522(f)(3) limits the tentative avoidance by a defined amount: the difference between

---

**10.** While the calculations in this Opinion attempt to follow the statutory formula, varying fact situations involving differing amounts of avoidable and nonavoidable liens will lead to wildly inconsistent results. Congress needs to revise the statute to provide logical and consistent results in lien avoidance. Slavish adherence to an arbitrary and illogical formula serves no public policy purpose. *See* Carlson, *supra* note 3, at 83–84.

the aggregate value of the Debtors' tools of the trade and $5,000. The FSA shall be allowed a net lien of $50,287, leaving the Debtors $5,000 in net equity over and above the lien.

This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure. A separate order will be entered pursuant to Rule 9021.